**Dorothy BISHOP, Appellant,**

v.

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri, and Division of Employment Security and Montgomery Ward & Company, Respondents.**

**No. KCD 29562.**

Missouri Court of Appeals,
Kansas City District.

June 12, 1978.

Dale K. Irwin, Suzanne Gladney, Kansas City, for appellant.

Sharon A. Willis, Kansas City, Rick V. Morris, Jefferson City, for respondent Division of Employment Security.

Charles B. Fain, Jefferson City, for respondent Labor and Industrial Relations Commission.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

From a determination that the applicant Dorothy Bishop was disqualified from Unemployment Compensation benefits, Bishop took successive administrative appeals which were held barred at each level on the ground of her undue delay. On petition for judicial review, the Circuit Court sustained the administrative action. We reverse and remand.

On December 5, 1975, Bishop requested a leave of absence for pregnancy, and her child was born on December 11. Between those dates, on December 8, she filed a claim for Unemployment Compensation benefits. Deputy Slusher determined on December 22 that Bishop was *ineligible* from December 7–20, 1975, because "the claimant was not able to work or looking for work." At the time when Slusher made

that determination he filled out in handwriting form MODES–2084–R11–2 containing that determination and handed it to Bishop. At the same time, he assisted Bishop in making out a Notice of Appeal to Appeals Tribunal which was signed by Bishop and left with Slusher. An appeal hearing was held on January 28, 1976, resulting in a Referee Decision which held Bishop to be ineligible for benefits for the two weeks, December 7–20, 1975.

Meanwhile, on December 29, 1975, Deputy Slusher made a determination that Bishop was *disqualified* from benefits "from 12–7–75" (the termination date of the disqualification period not being set forth) for the reason that "claimant left work with the above employer voluntarily without good cause attributable to his work or his employer on 12–5–75" and this typewritten determination was mailed to Bishop on that date. The determination of disqualification was set forth on MODES–2084–R11–2 which is precisely the same form used by the Division to reflect a determination of ineligibility, the difference being that different parts of the form are filled out for one determination as compared with the other. Bishop admits that she received the form dated December 29, but her testimony indicates that she did not realize that the December 29 determination related to the matter of *disqualification* as distinguished from the issue of *eligibility* which had been the subject of the December 22 determination.

About the end of January, 1976, Bishop's doctor advised her that she was in condition to go back to work and she then called and talked to her old foreman on the telephone. After that, she went to a reception on February 13 for the foreman who was retiring and asked him about coming back to work. The foreman answered that he would check with the head man in Personnel who would

let Bishop know. Four days later, on February 17, 1976, Bishop received a telephone call saying that she was laid off.

Bishop then returned to the Division of Employment Security to make reapplication for benefits. This reapplication was denied on March 1, 1976, on the ground that she had been determined to be disqualified on December 29, 1975, and that the period of disqualification would not expire until she earned ten times her weekly benefit amount after December 5, 1975. Bishop immediately appealed, and receipt of the appeal form was acknowledged by Deputy Slusher. This appeal form contained the following statement: "I appeal from this determination for the following reasons: 'My appeal is not timely because at the time I received the determination, I didn't think I was going to be laid off. I did not quit, I had to take the leave of absence.'" Bishop, in her testimony before the Appeals Tribunal, admitted having said, "I didn't quit, I had to take the leave of absence." However, she denied having given the balance of the quoted reason for late appeal.

The appeal dated March 1, 1976, was denied summarily without hearing on March 15, 1976. However, on March 23, 1976, that order was set aside and Bishop's appeal was set for hearing as to the timeliness and the merits. The hearing was held before Appeals Referee Vanderwerf on April 5, 1976, after which Vanderwerf rendered a decision on April 15, 1976, that Bishop's appeal was not timely filed from the determination of disqualification made on December 29, 1975, and that the determination mentioned had become final.[1]

Bishop then filed application for review of the Labor and Industrial Relations Commission, that application being postmarked April 26, 1976. On June 21, 1976, the Commission dismissed the application "because

1. Sec. 288.070, RSMo Supp.1974 provides:
"4. Unless the claimant . . . within ten calendar days after being notified by the deputy of his determination, it shall be final . . .
* * * * * *

"8. The ten day period mentioned in . . . subsection 4 of this section may, for good cause, be extended."
All other statutory references in this opinion, unless otherwise noted, will be to RSMo 1969.

it was not filed within the time allowed by law." [2]

When this cause reached the Circuit Court, the Circuit Judge initially ruled on January 3, 1977, that the application for review had not been timely filed before the Commission in that more than ten days had elapsed after the date of notification to Bishop of the Appeals Tribunal's decision. Bishop filed motion for new trial, pointing out that the tenth day following notification to her of the Appeals Tribunal decision was April 25, a Sunday, and that her time for appeal was therefore automatically extended an additional day to April 26, and that her motion was in fact mailed on April 26, 1976. The trial judge verified this to be true, and accordingly set aside his first judgment. He then entered an amended judgment on February 7, 1977, holding that the failure of the Commission to consider Bishop's cause on the merits "would normally require a remand of the case to the Industrial Commission for further proceedings." The court went on to say, however, that such a remand in this case "would be futile" because the notice of appeal to the Appeals Tribunal had been filed 50 days too late and the Appeals Tribunal had found that good cause had not been shown to extend the time for seeking review of the Deputy's determination of disqualification. The trial court concluded that the Appeals Tribunal decision finding no merit in plaintiff's claim for extension of the period for the filing of her appeal and dismissing such appeal "must be affirmed. * * * To remand the cause to the Industrial Commission would accomplish no result different from that here announced. For the reasons stated, the decision of the Appeals Tribunal dismissing plaintiff's claim as not timely filed is affirmed."

■ The fundamental difficulty with the disposition made by the Circuit Court stems from its effort to review and affirm the decision of the Appeals Tribunal. The court had no authority to do so, but rather its authority was confined to a review of the decision by the Commission. Chapter 288 establishes a three-tier system of appeals: first, Sec. 288.190 provides an appeal from the deputy to the Appeals Tribunal; second, Sec. 288.200 provides an appeal from the Appeals Tribunal to the Commission; and finally, Sec. 288.210 provides an appeal from the Commission to the Circuit Court. The statutory scheme makes no provision for court intervention before both administrative appeals have been exhausted.

■ True, the Commission in its discretion can deny an application for review of an Appeal Tribunal's decision, and in that event "the decision of the appeals tribunal shall be deemed to be the decision of the Commission for the purposes of judicial review." Sec. 288.200–1. However, that is not what happened here. The Commission did not *deny* Bishop's application, but instead *dismissed* it for an alleged lack of jurisdiction based on an assumption of fact now conceded to have been erroneous. The Commission has not yet exercised its discretionary right to deny Bishop's application, thereby adopting the Appeal Tribunal's decision and making that ruling subject to judicial review.

The trial court acknowledged this limitation on its power of review but considered that it should not apply under the circumstances of this case because a remand to the Commission "would accomplish no result different from that here announced." That statement by the trial court assumes that this record shows as a matter of law that Bishop had no good cause for not appealing in time from Deputy Slusher's determination of December 29, 1975. That assumption overlooks two important factors.

First, the record in this case is not yet frozen and may still be supplemented by further evidence before the Commission, as authorized by Sec. 288.200–1. The record at this point is somewhat confused as to whether and to what extent Bishop under-

2. Sec. 288.200–1 provides: "Any of the parties . . . to any decision of the appeals tribunal, may file with the commission within ten days following the date of notification or mailing of such decision, an application to have such decision reviewed by the commission."

stood the import of the form received by her notifying her of her disqualification from benefits or whether she mistook that for a more formal typewritten copy of the notice of ineligibility which had · already been handed to her in handwritten form. Furthermore, the record contains no information as to the extent of Bishop's education or general intellectual ability. These matters could be clarified by further evidence.

The second important matter overlooked by the trial court is that Appeals Referee Vanderwerf apparently misinterpreted or at least unduly limited the circumstances relied on by Bishop to show good cause for the late appeal. So in his opinion, Vanderwerf states: "The evidence shows that the only reason for the claimant's delay in filing an appeal was that she mistakenly may have thought that an earlier appeal could be made applicable to the determination." We do not understand that to be the import of Bishop's testimony; and in any event, the quoted statement does not reflect the full extent of the claim of "good cause" as set forth by Bishop's brief and argument in this court.

Bishop also argues that the Appeals Referee placed too narrow a construction upon the term "good cause," and that the restrictive definition of that term in 8 CSR 10–5.-020(2) [3], as applied in this case, conflicts with Sec. 288.020. Dealing with that argument would be premature now. That issue will ripen for judicial determination only after the facts have been fully developed administratively and the Commission has had full opportunity to review the facts and make its own interpretation of the Regulation as applied to the facts of this case.

The determination of good cause is addressed in the first instance to the sound discretion of the administrative agency, it depends on the evaluation of many subtle factors, and that determination is subject to judicial review only for abuse of discretion. *Langford v. Flemming*, 276

F.2d 215 (5th Cir. 1960); *Gardner v. Moon*, 360 F.2d 556 (8th Cir. 1966). A determination as to good cause has not yet been made by the Commission, and until that has occurred the administrative remedies have not been exhausted and Bishop has not been accorded her full statutory rights.

The judgment of the trial court is therefore reversed and the cause remanded with directions to remand to the Commission for further proceedings.

All concur.

---

**3.** Regulation .8 CSR 10–5.020(2) provides: " 'Good cause' shall be only those circumstances which are completely beyond the control of the person filing the protest or appeal and then only if the protest or appeal is filed as soon as practical under the circumstances."