**MERICK TRUCKING, INC., Appellant,**

v.

**MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 52376.**

Missouri Court of Appeals, Western District.

Argued Aug. 8, 1996.

Decided Nov. 26, 1996.

Keith D. Sorrell, Poplar Bluff, for appellant.

Larry R. Ruhmann, Mo. Div. of Employment Security, St. Louis, for respondent.

Before HANNA, P.J., SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

This case involves an appeal from the Labor and Industrial Relations Commission ("Commission") affirming a ruling of the Appeals Tribunal holding that truck drivers

working for Merick Trucking, Inc. ("Merick") are employees and not independent contractors under the Missouri Employment Security Law. Merick contends that the drivers are independent contractors. Because there was competent and substantial evidence from which the Commission could determine that Merick had the right of control as to the truck drivers' performance of their services, and because the evidence did not show that the drivers were truly independent contractors, we affirm the decision of the Commission.

The Division of Employment Security ("Division") determined that as of October 1, 1990, D.L. James, S.C. Webb, A. Newell, C.S. Pikey, J.R. Wilburn and all others similarly engaged as truck drivers, as shown on the Field Report of Wages, performed services for "wages" in "employment" by Merick within the meaning of those terms as defined in §§ 288.034.5 and 288.036, RSMo 1994. Merick appealed this determination and a hearing was held before an Appeals Tribunal. The referee issued a decision that the drivers are employees pursuant to § 288.034.5, RSMo 1994. Merick filed an application for review with the Commission contending the referee had erred in applying the law. The Commission affirmed the decision of the Appeals Tribunal, adopting the findings and decision of the referee. This appeal followed.

*Standard of Review*

This case is governed by Chapter 288, the Missouri Employment Security Law. In reviewing a decision of the Commission, an appellate court may not substitute its judgment on factual matters for that of the commission. Section 288.210 provides that the Commission's findings of fact, if supported by competent and substantial evidence and absent fraud, shall be conclusive. Substantial evidence is evidence which has probative force on the issues, and from which the trier of facts can reasonably decide the case. *Nettie's Flower Garden, Inc. v. SIS, Inc.,* 869 S.W.2d 226, 231 (Mo.App.1993). This court is not bound by the Commission's conclusions of law, including statutory interpretation. *Division of Employment Sec. v. Hatfield,* 831 S.W.2d 216, 218 (Mo.App.1992).

It is the court's duty to interpret and determine the legislative intent of the Missouri Employment Security law. *Division of Employment Sec. v. Labor & Indus. Relations Comm'n,* 617 S.W.2d 620, 622 (Mo.App.1981). Section 288.210, RSMo, Supp.1996, like § 287.495, RSMo 1994, provides that the reviewing court may grant relief only when 1) the commission acted without or in excess of its powers, 2) the decision was procured by fraud, 3) the facts found by the commission do not support the award, or 4) there was no sufficient competent evidence in the record to warrant the making of the award. In view of the fact that § 288.210, Supp.1996, and § 287.495, RSMo 1994, prescribe exactly the same grounds for the granting of relief on appellate review, we regard *Davis v. Research Medical Center,* 903 S.W.2d 557 (Mo. App.1995) as applicable to employment security decisions as well as worker's compensation decisions. In *Davis,* which dealt with review of worker's compensation decisions, we said:

> Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Id.* at 571. Thus, to the extent this appeal involves issues of law, we do not defer to the Commission. To the extent that it involves evaluating evidence supporting findings of the Commission, there is a two-step process set out in *Davis.*

> In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the

light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. *Davis,* 903 S.W.2d at 571.

This case differs from the usual truck driver case in that here the drivers enter into an agreement whereby they are designated the lessee of a particular truck belonging to Merick. The lease is terminable at will by either party. Merick maintains the trucks, pays for the fuel, and insures the trucks, which bear the Merick name and logo. The truckers pay nothing in order to have possession of the truck, except that Merick retains the bulk of the freight charges which are paid to Merick, paying a percentage to the drivers.

### The Commission's Decision

In the decision adopted by the Commission, the referee began the analysis with § 288.034.5, RSMo 1994, which states:

Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: If the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

The referee, in the decision, noted that Merick, which had to bear the burden of proof, did not offer evidence as to some of the factors relating to the right of control, such as whether Merick trained the drivers, whether the drivers were required to perform their services personally (or could subcontract or hire assistants), and whether during the period of association with Merick the drivers could perform driving services for any other ICC carrier.

The referee noted that the evidence showed that the relationship between the drivers and Merick was an ongoing relationship. Merick pays for maintenance of the equipment, fuel costs, and liability insurance costs. The referee considered these expenses significant expenses in the operation of the business. The referee reasoned that the assumption of these expenses by Merick dramatically reduced any exposure to the kind of major financial risks which one would ordinarily expect to characterize the circumstances of an entrepreneur truck driver. The referee also noted that, as a practical matter, the drivers were entirely dependent on Merick's favor because Merick held the ICC license, Merick handled the billings, Merick could terminate the relationship at any time, and there was no evidence that the drivers ever drove for any other trucking firm. The referee noted that this analysis had influenced the court in the closely related case of *Merick Trucking, Inc. v. Missouri Div. of Employment Sec.,* 902 S.W.2d 871 (Mo.App.1995), where the same leasing arrangement was before the court with regard to a different driver. In that case, the court upheld the determination of employee status.

The referee did note that there were some factors which were consistent with independent contractor status. Merick did not instruct drivers how or when to perform their services. The drivers were free to accept or refuse loads. The drivers performed no services on the premises of Merick's place of business in Bloomfield, Missouri. Nevertheless, the referee concluded that in the context of the entire set of circumstances, the most significant factors were indicative of employment status.

Appellant argues that one difference between this case and *Merick I* is that there was testimony in this case that the drivers could subcontract with other drivers, or hire other drivers, to drive for them. We find no such testimony in the trial transcript, except for some testimony that drivers could "team haul" (travel together so they could drive more consecutive hours on one trip). We do

not see that evidence as particularly significant in the context of this case.

We do not view the case as hanging on determinations of credibility, although there were some conflicts in the testimony related to the degree to which control was actually exercised by Merick. Rather, if one looks only at the undisputed evidence, and takes Merick's testimony at face value, there is still competent and substantial evidence to support the Commission's determination of employee status.

The lease arrangement is an unusual one. It is for an indefinite period. There is no payment required for possession of the truck. The truck bears the Merick name and logo. Seventy-four per cent of the income derived from the operation of the vehicle is retained by Merick, and the balance is paid to the driver. It is implicit that the truck is to be employed to produce revenue for Merick rather than for any other purpose the trucker might wish to pursue. Merick maintains and insures the trucks, and pays for the fuel out of the funds received from the customer. The drivers have virtually no exposure to financial risk in the process, as would ordinarily be the case under a lease. It is true that the drivers are allowed the freedom to select the hauling jobs they want. Merick posts the available jobs, and the drivers select the jobs they want. The way things work out, there is generally an adequate supply of drivers willing to take any given hauling job. Merick can adjust the supply of drivers by obtaining another truck, finding someone to drive the truck, and then training the driver. There was no evidence that Merick ever had to subcontract to another company because its own drivers did not want the work. The Commission understood the economic reality that the drivers are dependent on Merick. The Commission could find that Merick is entitled to the say-so about how the work is to be performed, even if Merick does not exercise it, because of the unique circumstances of this case. The Commission had the right to assume that any driver failing to produce revenue will find his "lease" terminated promptly. It is the "common law agency *right* to control ... the manner and means of performance" which is the statutory test, not the actual exercise of control. Section 288.034.5 (emphasis added). Although being an independent trucker is an established and recognized form of independent contracting, such entrepreneur truckers generally operate under an arrangement whereby they share some of the financial risks and work for a variety of hauling companies. Here, the Commission could find that the common sense reality is that these drivers are not self-employed independent contractors, but that instead they work for Merick.

Merick's additional argument that the evidence presented at the hearing was insufficient to support the finding that the drivers in question received remuneration for personal services is without merit. The names of the truck drivers, their social security numbers and the amount of remuneration received from Merick were part of the record. The decision of the Labor and Industrial Relations Commission is supported by competent and substantial evidence. The Commission did not err in applying the law.

The decision of the Commission is affirmed.

All concur.