**Marie NELL, Appellant,**

v.

**FERN–THATCHER COMPANY,
Defendant,**

**Division of Employment Security,
Respondents.**

**No. WD 53883.**

Missouri Court of Appeals,
Western District.

Sept. 9, 1997.

Rehearing Denied Oct. 28, 1997.

Party Acting pro se.

Ronnae L. Coleman, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

ELLIS, Judge.

Marie Nell appeals from a decision of the Labor and Industrial Relations Commission denying her claim for unemployment compensation.

The record reflects that Marie Nell worked for the Fern–Thatcher Company as a production worker from Wednesday, February 14, to Friday, February 16, 1996. The following Monday, around 7:00 a.m., Nell telephoned the company's general manager to notify her that she had a dentist appointment that morning, but would return to work that afternoon. The general manager asked

Nell why she had not told her of the appointment sooner. Nell stated that she had not thought to do so. The general manager ended the conversation by telling Nell that she would see her later. Nell returned home from the dentist's office around noon. About 3:30 p.m., Nell called the general manager and advised her that she had secured another job and would not be back to work at Fern–Thatcher.

Thereafter, Nell filed a claim for unemployment benefits for the week of February 18, through February 24, 1996. On October 9, 1996, the Division of Employment Security considered Nell's claim and made the following determinations:

(1) Nell left her position voluntarily without good cause attributable to her work or employer, thereby disqualifying her for unemployment benefits for the week of February 18, through the 24th, until such time as she earns ten times her weekly benefit amount in insured work;

(2) Nell was ineligible for benefits for the week of February 18 through February 24, 1996, because she was not available for work, in that she was not actively and earnestly seeking work;

(3) Nell was overpaid $2,276 in benefits for the weeks February 18, 1996 through May 25, 1996, because she had collected benefits during a period of disqualification; and,[1]

(4) Nell was overpaid Trade Readjustment Allowance in the amount of $2,625 for the period May 26, 1996 through September 7, 1996, because she was not an unemployment insurance exhaustee.

Nell appealed to the Division's Appeals Tribunal. Following a hearing on November 6, 1996, the Appeals Tribunal affirmed the Division's findings. Nell then appealed to the Labor and Industrial Relations Commission. The Commission affirmed the findings of the Appeals Tribunal and adopted them as its own. Nell now appeals, *pro se,* from the Commission's decision.

---

1. The procedural history that may be extrapolated from the record reflects: Nell filed her initial claim under the Missouri Employment Security Law establishing a benefit year beginning September 3, 1995. Her weekly benefit amount for the benefit year was $175. She filed weekly claims for benefits for a number of weeks during the period of September 3, 1995 through May 25, 1996.

**752** ◼

◼ Our review of the Commission's decisions in unemployment compensation proceedings is governed by § 288.210, RSMo Supp.1996, which provides in pertinent part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

In applying this section, we utilize the procedure announced in *Davis v. Research Medical Center*, 903 S.W.2d 557 (Mo.App. W.D. 1995). *See also Merick Trucking, Inc. v. Missouri Dep't. of Labor & Indus. Relations, Div. of Employment Sec.*, 933 S.W.2d 938, 940 (Mo.App. W.D.1996). Consequently,

Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Davis*, 903 S.W.2d at 571. Thus, to the extent an appeal involves issues of law, we do not defer to the Commission. On the other hand, to the extent it involves evaluating evidence relative to the Commission's findings, we may not substitute our judgment on the evidence for that of the Commission, and we defer to the Commission's determinations regarding the weight of the evidence and the

credibility of witnesses. *Id.* Moreover, we employ a two-step process of review:

In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Id.*

◼ Nell first challenges the Commission's finding that she voluntarily quit her job with Fern–Thatcher. Nell claims she was discharged by the general manager when she called in on the afternoon of February 19th.

At the hearing, Nell testified as to her conversation with the general manager:

I waited for the numbness to wear off and I called her I think it was about 2:30, 3 o'clock and told her that I'd be on in, I knew it was late in the afternoon but I'd be on in and she said well you was probably out looking for a job anyway. And she was kind of rude so I said okay, yeah, whatever. . . . And I told her that if I find another job it would be one with benefits.

According to Nell, the general manager responded by saying, "well I won't see you tomorrow then." When asked why she did not return to work the next day, Nell answered: "the way she put it I won't see you tomorrow made me feel that she wasn't expecting me to be back tomorrow either." Also introduced into evidence was a statement made by Nell to a Division employee during a telephone conversation on September 23, 1996, wherein she stated: "I quit because I did not like the owner's attitude."

The general manger testified at the hearing on Fern–Thatcher's behalf. She stated that she made a written note of her telephone conversation with Nell, and according to her notes, Nell had called the factory at 3:30 p.m. on the 19th and told her that "she found another job with benefits and would not be coming back in." After evaluating the evidence before it, the Commission concluded that Nell left work voluntarily on February 19, 1996, because she did not like the general manager's attitude.

■ The only evidence supporting Nell's contention that she was discharged is her testimony to that effect. The evidence before the Commission concerning the February 19th telephone calls was conflicting. Resolution of conflicting evidence is for the Commission, and its choice is binding upon this court. *Fehr v. R & S Exp.*, 924 S.W.2d 331, 333 (Mo.App. E.D.1996). Thus, to the extent Nell is asking this court to re-weigh her credibility, we decline to do so. There was sufficient, competent evidence to support the Commission's determination that Nell voluntarily quit her employment with Fern–Thatcher, and that conclusion was clearly not against the overwhelming weight of the evidence.

■ Pursuant to § 288.050.1 of the Missouri Employment Security Law, an employee who voluntarily quits work without good cause attributable to his work or employer does not qualify for benefits. § 288.050.1, RSMo 1994.[2] Nell bears the burden of establishing that she quit her employment for good cause. *Mitchell v. Division of Employment Sec., State of Mo.*, 922 S.W.2d 425, 427 (Mo.App. S.D.1996). Whether the employee had "good cause" to terminate employment is a question of law. *Clark v. Labor & Indus. Relations Comm'n*, 875 S.W.2d 624, 627 (Mo.App. W.D.1994). Where the question is one of law, we are not bound by the decision of the Commission, but must determine for ourselves whether the

evidence and inferences drawn therefrom establish good cause. *Davis*, 903 S.W.2d at 571.

■ "Good cause is a cause which reasonably would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed." *Division of Employment Sec. v. Labor & Indus. Relations Comm'n*, 636 S.W.2d 361, 363 (Mo.App. E.D.1982). "A worker has good cause to terminate employment voluntarily when that conduct conforms to what an average person, who acts with reasonableness and in good faith, would do." *Heavy Duty Trux, Ltd. v. Labor & Indus. Relations Comm'n*, 880 S.W.2d 637, 641 (Mo. App. W.D.1994). This standard requires that the employee's concerns be real or that of a reasonable worker, not the supersensitive. *Tin Man Enter., Inc. v. Labor & Indus. Relations Comm'n*, 866 S.W.2d 147, 149 (Mo. App. E.D.1993). Moreover, they must be so compelling that a reasonably prudent person would be justified in terminating employment. *Charles v. Missouri Div. of Employment Sec.*, 750 S.W.2d 658, 661 (Mo.App. W.D.1988). Mere dissatisfaction with working conditions generally does not constitute good cause for quitting one's employment. *Id.* To demonstrate good faith, the employee must show he made an effort to resolve the dispute before quitting. *Tin Man*, 866 S.W.2d at 149.

The evidence, viewed in the appropriate light, reveals that Nell quit her employment with Fern–Thatcher because she did not like the general manager's attitude. She concedes as much in her telephone conversation with the Division employee on September 23, 1996:

**I did not call [the general manager] back again on February 19, '96, nor did I report for work the following day February 20, '96, because of the way she**

---

**2.** Section 288.050.1 provides, in pertinent part:
    1. Notwithstanding the other provision of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation

laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds: (1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer. . . .

**treated me over the phone. She was so rude and snotty to me when I told her I would be late on February 19, '96, I just not—just did not go back because of her attitude.**

■ Dissatisfaction with a supervisor, stemming from a single telephone conversation, does not qualify as a real and substantial reason for quitting one's employment. "To constitute good cause, the circumstances motivating an employee to voluntarily terminate employment must be real not imaginary, substantial not trifling, and reasonable not whimsical...." *Belle State Bank v. Indus. Comm'n,* 547 S.W.2d 841, 846 (Mo.App. S.D. 1977). A single instance of rudeness would not motivate a reasonable and prudent person to abruptly quit a paying job to enter the ranks of the unemployed. Furthermore, Nell made no effort to advise her employer of her dissatisfaction with the general manager. Instead, she quit before the employer could do anything to address her concerns. "When an employee never speaks to management about a work grievance and instead quits 'in disgust,' that precipitate conduct is unreasonable and manifests a lack of good faith...." *Clark,* 875 S.W.2d at 627. Nell voluntarily quit her employment at Fern–Thatcher without good cause to do so, therefore, the Commission did not err in denying her unemployment benefits until such time as she has earned wages for work insured under the unemployment compensation equal to ten times her weekly benefit amount. Point denied.

■ Nell's remaining points on appeal read as follows:

Point II: The Labor and Industrial Relations Commission erred as a matter of law in affirming the decisions of the Appeal's Tribunal in that the appellant was not available for work February 18–24, 1996, when appellant didn't miss her classes that night.

Point III: The labor and Industrial Relations Commission erred as a matter of law in affirming the decision of the Appeal's Tribunal in that the appellant was not paid $2276.00 in benefits.

Point IV: The Labor and Industrial Relation Commission erred as a matter of law in affirming the decisions of the Appeal's Tribunal in that the appellant did exhaust all her right to benefits under the Missouri Employment Law. So the appellant could receive the benefits under the Trade Readjustment Allowance.

■ As a *pro se* defendant, Nell is bound by the same rules of procedure as an attorney. *State v. Nenninger,* 872 S.W.2d 589, 590 (Mo.App. S.D.1994). She must satisfy all relevant rules of procedure, and we cannot hold her to a lower standard of performance based on her *pro se* status. *Arenson v. Arenson,* 787 S.W.2d 845, 846 (Mo.App. E.D. 1990). Nell has wholly failed to meet the requirements of Rule 84.04, which provides in relevant part:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder....

Rule 84.04(d). Additionally, "setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not in compliance with this Rule." Rule 84.04(d).

Points II, III and IV are wholly inadequate under Rule 84.04. Nell fails to identify in these points relied on, or in her argument, what action or ruling of the trial court she is challenging, or why the lower court erred. Moreover, the argument portion of Nell's brief consists of three short paragraphs and addresses only Nell's claim that she did not voluntarily quit her employment with Fern–Thatcher (Point I).[3] There is no reference, whatsoever, to the issues raised in the re-

---

**3.** Her argument in full reads:

I didn't quit my job at Fern–Thatcher Co. on Feb. 19, 1996 I called in and told [the general manager] that I had a dentist appointment at 8:30 a.m. the same day. I called her back later that afternoon to tell her that I would be in to work she then told me not to come in.

So I told her that I would see her in the morning. Again she told me not to come back to work. I asked her if [sic] was because I had had a dental appointment if so I had a statement from the dentist she said she didn't care and that she did not want me to come in to work.

maining points relied on. Finally, the argument is completely devoid of any references to the legal file or the transcript, and provides this court with no citations to authority. Rule 84.04(h) requires that "all statements of fact and argument shall have specific page references to the legal file or the transcript." Rule 84.04(h).

Where a party fails to comply with Rule 84.04, they present nothing for appellate review. *Jones v. Jones,* 937 S.W.2d 352, 357 (Mo.App. S.D.1996). Despite the procedural defects, this court may consider such points on appeal, *ex gratia,* where appropriate to prevent manifest injustice. *Arenson,* 787 S.W.2d at 846. In the instant case, such review would require this court to search the record for possible errors and then research those errors revealed. "That is the duty of the parties, not the function of an appellate court." *Id.* Accordingly, points II through IV are denied.

The decision of the Commission is affirmed.

All concur.

I don't think that it is fair that she took away all that I had worked so hard for. I know that I would still be working for the Fern–Thatcher Co. if she wouldn't have let me go.
I have been a hard worker all my life and I never quit any job I have had. I didn't ask the Lee Co. to close down in 1995. I worked for the Lee Co. for over 13 years and only missing 5 days on my own. So I am used to hard work. *Again I would like to state that I did not quit my job.* (emphasis in original).