PHARMFLEX, INC., Appellant,

v.

DIVISION OF EMPLOYMENT SECURITY, Respondents.

No. WD 53233.

Missouri Court of Appeals, Western District.

Sept. 30, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1997.

Application for Transfer Sustained Jan. 27, 1998.

Case Retransferred April 27, 1998.

Court of Appeals Opinion Readopted May 13, 1998.

Henry Thomas Herschel, Jefferson City, for Appellant.

Sharon Ann Willis, Div. of Employment Security, Kansas City, for Respondent.

Before BRECKENRIDGE, P.J., and SMART and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

PharmFlex, Inc., appeals from the Labor and Industrial Relations Commission's ruling that PharmFlex did not show good cause to extend the time period to appeal the determination by a deputy of the Division of Employment Security that PharmFlex was liable for unemployment taxes. The Commission's decision was based upon 8 CSR 10–5.040(4), which defines "good cause" as "those circumstances which are completely beyond the reasonable control of the party and then only if that party acts as soon as practical under the circumstances." On appeal, PharmFlex contends that this regulation violates the intent of the legislature because the regulation is more restrictive than the legislature intended and modifies the meaning of "good cause" as used in § 288.130, RSMo 1994.[1] Alternative-

1. All statutory citations are to Revised Statutes of Missouri 1994, unless otherwise indicated.

ly, PharmFlex claims that the Commission abused its discretion because its decision that PharmFlex failed to demonstrate good cause was not supported by the evidence.

Because the definition of "good cause" in 8 CSR 10–5.040(4) is in conflict with the legislative intention of § 288.130.4, the regulation is invalid as it pertains to that statute. The Commission acted beyond its powers in applying the invalid definition, and its decision that there was no good cause to extend the time period to appeal is reversed. Since the question whether there is good cause is addressed in the first instance to the sound discretion of the administrative agency, the matter is remanded to the Commission for a determination of whether PharmFlex demonstrated good cause to file an untimely appeal under the common law definition of that term.

▬ Unemployment compensation proceedings are governed by Chapter 288, RSMo, the Missouri Employment Security Law. *Merick Trucking v. Dept. of Labor & Indus. Rels.*, 933 S.W.2d 938, 940 (Mo.App. 1996). Under § 288.210, RSMo Supp.1996, decisions of the Labor and Industrial Relations Commission are appealed directly to the appellate courts. An appellate court may modify, reverse, remand for rehearing, or set aside a decision of the Commission only on the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210, RSMo Supp.1996. *See also Merick Trucking*, 933 S.W.2d at 940; *Bartsch v. Moore*, 931 S.W.2d 877, 879 (Mo. App.1996). Findings of fact by the Commission, if supported by competent and substantial evidence and in the absence of fraud, are conclusive and the appellate court's jurisdiction is limited to questions of law. Section 288.210, RSMo Supp.1996. Therefore,

Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App.1995). Thus, to the extent this appeal involves questions of law, no deference is given to the Commission. *Nell v. Division of Employment Sec.*, 952 S.W.2d 749, 752 (Mo.App.1997). To the extent the appeal involves evaluating evidence relative to the Commission's findings, however, "we may not substitute our judgment on the evidence for that of the Commission, and we defer to the Commission's determinations regarding the weight of the evidence and the credibility of witnesses." *Id.* at 752.

The evidence before the Commission was that PharmFlex was a Pennsylvania-based corporation which provided sales and marketing support to pharmaceutical companies by utilizing sales representatives to contact physicians with information about the pharmaceutical company's products. Jennifer Bibik, a PharmFlex sales representative, worked for PharmFlex under a contract titled "Independent Contractor Agreement." PharmFlex did not pay unemployment taxes on her.

When Ms. Bibik left the employ of PharmFlex, she filed for unemployment benefits with the Division of Employment Security. Her application caused the Division to investigate whether PharmFlex was liable for unemployment taxes. At the conclusion of the investigation, PharmFlex received a "Determination of Liability" from a Deputy of the Division informing it that, based on the Division's investigation, Ms. Bibik performed services for "wages" in her "employment" by PharmFlex, as those terms are defined in Chapter 288. Thus, PharmFlex was found to

be an "employer" subject to the Missouri unemployment security law and was assigned an unemployment tax contribution rate for each year from 1994 through 1996.

The determination of liability was mailed to PharmFlex on Monday, November 13, 1995, and it was received by PharmFlex on Friday, November 17, 1995. The letter informed PharmFlex that the Deputy's determination would become final "fifteen days after the date of mailing unless, within such fifteen days, a signed, written request for hearing is filed with this Division setting forth in detail your objections." On December 1, 1995, three days after the November 28th deadline, PharmFlex filed its request for a hearing before the Appeals Tribunal of the Division.

As a result of this request, the Appeals Tribunal held an evidentiary hearing by telephone to determine two issues: (1) whether PharmFlex had good cause to file a late appeal; and (2) whether Ms. Bibik was an employee of PharmFlex or an independent contractor. Testifying on behalf of PharmFlex were George Mellilo, the president and chief executive officer; Mr. Mellilo's daughter, Laura Mellilo, the vice president of finance; and Robert Downey, an accountant for PharmFlex. Mr. Mellilo was absent from the office throughout the entire fifteen-day appeal period, so he testified mainly about the business relationship between PharmFlex and Ms. Bibik.

Since Ms. Mellilo authored the appeal letter requesting the hearing, the appeals referee questioned her about the circumstances surrounding the late filing of the appeal. At the time the letter was sent, Ms. Mellilo was the associate director for finance and new business development for PharmFlex. The appeal letter explained that several factors prevented PharmFlex from filing a timely appeal from the determination of liability, including the closing of the office during the Thanksgiving holiday weekend, business travel, and an unexpected death in the family. Ms. Mellilo testified that she was absent from the office on Friday, November 17, when the determination of liability arrived at

PharmFlex. She was unsure of her whereabouts on Monday, Tuesday and Wednesday, November 20, 21 and 22. The office was closed on Thursday and Friday, November 23 and 24, for the Thanksgiving weekend. Ms. Mellilo was in the office on Monday, November 27. That afternoon, she was notified that her father's uncle in Connecticut had passed away and she left for the funeral to accompany Mr. Mellilo. The first day Ms. Mellilo and her father were in the office after the funeral was December 1st, the day the request for a hearing was prepared and mailed.

The threshold issue which the Appeals Tribunal addressed was whether PharmFlex demonstrated good cause, within the meaning of § 288.130.4, to extend the fifteen-day time period available to file an appeal under § 288.130.3. Section 288.130, establishing the procedure for an appeal from an administrative determination of liability, provides in part:

> 3. A deputy shall make an ex parte determination after investigation but without hearing with respect to any matter pertaining to the liability of an employing unit which does not involve a claimant. The deputy shall promptly notify any interested employing units of each such determination and the reason for it. The division shall grant a hearing before an appeals tribunal to any employing unit appealing from any such ex parte determination provided an appeal is filed in writing within fifteen days following the date of notification or the mailing of such determination to the party's last known address. In the absence of an appeal any such determination shall become final at the expiration of a fifteen-day period.... [2]

> 4. The fifteen-day period provided in subsection 3 of this section may, for *good cause*, be extended.

(Emphasis added).

Under subsection 4, the time period to file an appeal may be extended for good cause. The term "good cause" is defined by regulation in 8 CSR 10–5.040(4):

**2.** The legislature recently amended § 288.130.3 to lengthen the available time period from fifteen

days to thirty days. Section 288.130.3, RSMo. Supp.1996.

For the purposes of sections 288.070.8 and 288.130.4, RSMo, and of [chapter 5 of these regulations], *good cause* shall be only those circumstances which are completely beyond the reasonable control of the party and then only if that party acts as soon as practical under the circumstances.

(Emphasis added).

The Appeals Tribunal applied the definition of "good cause" provided by 8 CSR 10–5.040(4) to the evidence presented at the hearing and concluded as a matter of law that "[PharmFlex] has not shown to the satisfaction of the Appeals Tribunal that circumstances completely beyond its reasonable control delayed the filing of the appeal until December 1, 1995." Thus, the Deputy's administrative determination of liability became final and the Appeals Tribunal lacked jurisdiction to address the issue of Ms. Bibik's business relationship with PharmFlex. The Labor and Industrial Relations Commission subsequently adopted and affirmed the decision of the Appeals Tribunal. PharmFlex filed a timely appeal from the Commission's decision to this court.

■ In PharmFlex's first point on appeal, it asserts that the Division erred in the promulgation of 8 CSR 10–5.040(4), defining "good cause" under § 288.130. It claims that the Division exceeded its authority by defining "good cause" more restrictively than the legislature intended, thus modifying the statutory meaning. PharmFlex contends that the legislature enacted § 288.130 with an understanding of the manner in which courts of this state have construed the term "good cause," and the regulation is invalid because it employs a standard for "good cause" which subverts the meaning intended by the legislature.

This case presents the first time a court of this state has addressed the issue of whether the standard for "good cause" found in 8 CSR 10–5.040(4) is consistent with the legislative objective in using that term in § 288.130.4. In *Bishop v. Labor & Indus. Rel. Com'n*, the appellant asked this court to determine whether a regulation with an identical definition of "good cause"[3] was too re-

strictive and narrow, and in conflict with § 288.020, RSMo 1969. 567 S.W.2d 736, 740 (Mo.App.1978). But, the issue was found to be premature because the cause was being remanded for further proceedings. *Id.* In *Todaro v. Labor & Indus. Rel. Com'n*, the Eastern District of this court held that the Labor and Industrial Relations Commission did not abuse its discretion in failing to find good cause to excuse the untimely appeal of an unemployment compensation claimant. 660 S.W.2d 763, 766 (Mo.App.1983). However, in so doing the court stated that "[t]he agency should not interpret our decision in this case as approving of its regulation concerning 'good cause'. . . ." *Id.* Most recently, the Eastern District applied the same standard for "good cause," in 8 CSR § 10–3.010(11), to affirm the Commission's decision that the claimant did not show good cause for a retroactive filing of his claim. *Mosca v. Mo. Dept. of Labor*, 924 S.W.2d 609, 611 (Mo.App.1996). In *Mosca*, however, the court was not faced with a challenge to the validity of the regulation defining "good cause," as is the case here.

■ When an agency's rules and regulations promulgated under an act are challenged, they will be sustained unless they are "unreasonable and plainly inconsistent with the act;" rules and regulations are not to be overturned except for weighty reasons. *Termini v. Missouri Gaming Com'n*, 921 S.W.2d 159, 161 (Mo.App.1996); *Associated Gen. Contractors v. Dept. of Labor & Indus. Rel.*, 898 S.W.2d 587, 590 (Mo.App.1995). An administrative agency's authority is limited to that granted by statute and any regulation promulgated must be within the authority of statute. *State ex rel. Doe Run Co. v. Brown*, 918 S.W.2d 303, 306 (Mo.App.1996). The rules or regulations of a state agency are invalid if they are beyond the scope of authority conferred upon the agency, or if they attempt to expand or modify statutes. *Doe Run*, 918 S.W.2d at 306. Further, regulations may not conflict with the statutes and if a regulation does, it must fail. *Id.* The challenger of an administrative regulation carries the burden to show the regulation "bears no reasonable relationship to the legislative objective." *Termini*, 921 S.W.2d at 161. Thus,

---

**3.** This regulation, 8 CSR § 10–5.020(2), was re-scinded on March 13, 1983.

the initial issue to determine is whether the legislature's intention when it used the term "good cause" in § 288.130.4 is in conflict with the standard for "good cause" found in 8 CSR 10–5.040(4).

The primary goal of statutory construction is to "determine the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the language in its plain and ordinary meaning." *Campbell v. Labor & Indus. Rel. Com'n,* 907 S.W.2d 246, 249 (Mo.App.1995). "The entire statute should be construed to determine legislative intent, and all provisions should be harmonized, if reasonably possible." *Id.* All consistent statutes relating to the same subject are *in pari materia* and are construed together and presumed to be intended to be read consistently and harmoniously. *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991).

When the legislature enacts a statute referring to a term which it does not define and which has judicial or common law meaning attached to it, the legislature is presumed to have acted with knowledge of that meaning. *Citizens Elec. v. Dir. of Dept. of Rev.,* 766 S.W.2d 450, 452 (Mo. banc 1989); *St. Joseph Light & Power Co. v. Nodaway Worth Elec.,* 822 S.W.2d 574, 576 (Mo.App.1992). According to the Missouri Supreme Court, " '[w]here a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended.' " *State v. Duggar,* 806 S.W.2d 407, 408 (Mo. banc 1991) (quoting *Maltz v. Jackoway–Katz Cap Co.,* 336 Mo. 1000, 82 S.W.2d 909, 912 (1934)). *See also State ex rel. Quest Communs. v. Baldridge,* 913 S.W.2d 366, 369 (Mo.App.1996).

"Good cause" has a well-known meaning at common law. In *State v. Davis,* 469 S.W.2d 1, 4–5 (Mo.1971), the Missouri Supreme Court addressed the use of "good cause" in the context of a criminal nonsupport statute where there was no statutory definition of the term. The Court recognized Webster's Third New International Dictionary's definition of "good cause" as "a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reason-able man under all the circumstances." *Id.* And, the Court considered the use of the term in other contexts. *Id.* at 5. The Court then concluded that the term "good cause" is not unconstitutionally vague, and "has a sufficiently well understood meaning that further definition was not required." *Id.*

The appellate courts have addressed the requirement of "good cause" under various statutes which do not define the term and, like *Davis,* have reviewed the trial courts' decisions under the facts of each case. For example, in *In re Marriage of S.G.,* 824 S.W.2d 109, 110 (Mo.App.1992), the court affirmed the denial of a motion for contempt because the movant failed to prove an absence of good cause for the custodial parent's failure to comply with the visitation order, as required by § 452.400, RSMo Supp.1989. A criminal conviction was affirmed in *State v. White,* 728 S.W.2d 564, 566 (Mo.App.1987), upon the finding that there was good cause within the meaning of § 217.460, RSMo, to delay the defendant's trial beyond the one-hundred-eighty-day period of the Uniform Mandatory Disposition of Detainers Law. And, sufficient evidence was found in *H.D. v. E.D.,* 629 S.W.2d 655, 657 (Mo.App.1982), to support the juvenile court's finding that the juvenile was abandoned without good cause under § 211.447.2(2)(a)b, RSMo 1978.

In a nonstatutory use of "good cause" which is somewhat analogous to this case, Rule 75.01 requires that a trial court have good cause to vacate, reopen, correct, amend, or modify its judgment. In that instance, the appellate court found that the term "eludes a precise definition, but refers to a remedial purpose and is to be applied with discretion to prevent a manifest injustice or to avoid a threatened one." *In re Marriage of Bennett,* 938 S.W.2d 952, 957 (Mo.App.1997). *See also B.L.C. (K) v. W.W.C.,* 568 S.W.2d 602, 605 (Mo.App.1978).

Although the term does not require definition, necessary factors have been articulated where the issue is whether an unemployment claimant has good cause to voluntarily terminate employment under § 288.050.1(1). The term in that circumstance requires: 1) reasonableness and 2) good faith. *American Family Ins. Co. v. Hilden,* 936 S.W.2d 207, 210 (Mo.App.1996). There is good cause when the decision to

voluntarily terminate employment conforms to what an average person, who acts with reasonableness and in good faith, would decide. *Wingo v. Pediatric & Adol. Med. Consultants,* 932 S.W.2d 898, 899 (Mo.App.1996); *Clark v. Labor & Indus. Rel. Com'n,* 875 S.W.2d 624, 627 (Mo.App.1994).

By law, the legislature is presumed to have used the term "good cause" in § 288.130.4, with a standard in mind consistent with the common law meaning found in the authorities discussed above. After a review of these authorities, this court is persuaded that 8 CSR 10–5.040(4) is invalid in its application to § 288.130.4 because it defines "good cause" as "only those circumstances which are completely beyond the reasonable control of the party and then only if that party acts as soon as practical under the circumstances." This regulatory definition is more restrictive than any common law definition and directly conflicts with the intent of the legislature as that term is used in § 288.130.4.

In enacting Chapter 288, the legislature utilized the term "good cause" ten times in seven different statutes.[4] However, the "good cause" standard found in 8 CSR 10–5.040(4) applies only to §§ 288.070.8 and 288.130.4. The agency definition governs "good cause" to extend the ten-day period for an employer to protest the allowance of benefits to a claimant upon the original filing of a claim. Sections 288.070.1 and .8. It also applies to extensions of the fifteen-day period in which a claimant or an employer can appeal a Division deputy's determination of whether and in what amount the claimant is entitled to benefits. Section 288.070.3 and .8. Finally, the definition of "good cause" in the regulation governs extensions of the period at issue in this case, the fifteen-day period in § 288.130.3 for an employer to appeal a deputy's determination with respect to any matter pertaining to the liability of an employer which does not involve a claimant. Section 288.130.4.

Under the common law, different standards for "good cause" may be apropos, as dictated by the facts and circumstances of each case. For this reason, the Division's

definition is not necessarily invalid because it applies to three of the ten usages of the term in Chapter 288. The problem is with the particular definition in 8 CSR 10–5.040(4) as applied to those three usages. There is no evidence in § 288.130, or elsewhere in Chapter 288, that the legislature intended the restrictive definition of "good cause" adopted by the Division in the regulation. It cannot be presumed that the legislature intended to apply a standard for "good cause" which is inconsistent with the common law, when the legislature did not express an intent to do so or define the term itself. *See Duggar,* 806 S.W.2d at 408. Therefore, the restrictive definition of "good cause" in 8 CSR 10–5.040(4) is invalid, as it applies in our case to § 288.130.4, because it is plainly inconsistent with the legislature's intention and is an unreasonable restriction of an employer's statutory right to an extension of the fifteen-day period for filing an appeal from the deputy's determination of liability.

Based on our survey of common law principles, we believe it can be said that the standard for extending the time for appeal adopted by the legislature in § 288.130.4 is one providing for the grant of an extension when it appears that the party seeking extension acted in good faith and acted reasonably under all the circumstances, and it further appears that the factual and legal contentions of the party are not patently without merit. We conclude that these common law concepts conflict with the requirement that the party be able to show "circumstances completely beyond the reasonable control of the party." Any attempt at a definition of "good cause" must not conflict with the principles embedded in the common law concept.

It is clear from the Appeals Tribunal's written conclusions of law that it applied the invalid standard for "good cause" found in 8 CSR 10–5.040(4). "Like all administrative bodies, the Labor and Industrial Relations Commission has only such jurisdiction as is conferred upon it by statute." *Doe Run,* 918 S.W.2d at 306. The Commission acted in excess of its authority by adopting the decision of the Appeals Tribunal which applied a

---

4. *See* §§ 288.030(26)(c), RSMo Supp.1995; 288.050.1(1) and (3); 288.070.3 and .8; 288.130.3 and .4; 288.140; 288.380.9; and

§ 288.382, the versions of the statutes in effect when this matter was decided by the Commission.

invalid regulation. Thus, the decision of the Commission denying PharmFlex an extension of time for filing its appeal is set aside.

Because the decision of the Commission is reversed, PharmFlex's claim that there was not sufficient competent evidence to support the Commission's decision that PharmFlex failed to show good cause to file an untimely request for a hearing is moot. The issue of good cause is " 'addressed in the first instance to the sound discretion of the administrative agency, [as] it depends on the evaluation of many subtle factors, and that determination is subject to judicial review only for abuse of discretion.' " *Todaro,* 660 S.W.2d at 765 (quoting *Bishop,* 567 S.W.2d at 740). *See also Mosca,* 924 S.W.2d at 611.[5] Because the Commission applied an invalid definition of "good cause" in its ruling, the matter must be remanded for the exercise of its discretion under the proper standard for "good cause."

All concur.

### ORDER ON MOTION FOR REHEARING OR TO TRANSFER

PER CURIAM.

The Division of Employment Security asserts in its motion for rehearing or for transfer to the Supreme Court that our opinion is in conflict with a recent decision of this court in *Casagrande v. Division of Employment Security,* 951 S.W.2d 754, (Mo.App.1997). In *Casagrande,* this court relied upon the definition of "good cause" in 8 CSR 10–5.040(4), while in this case the court found that the same definition was invalid because it was in conflict with the legislative intention of § 288.130.4, RSMo 1994. While the decision of the court in *Casagrande* was an order opinion and of no precedential value, the confusion over the issues raised in the two cases emphasizes the need to clarify that our opinion, here, does not declare the definition of "good cause" in 8 CSR 10–5.040(4) invalid for all purposes.

In this case, 8 CSR 10–5.040(4) defined the term "good cause" as that term was used in a statute. The definition was found invalid because it was more restrictive than the common law definition intended by the legislature when it used that term in § 288.130.4. In *Casagrande,* the regulation defined "good cause" as that term was used in another regulation, 8 CSR 10–5.040(2)(C). The agency was free to define the term, as it was used in another regulation, in any manner it desired. That case did not involve any conflict with the intent of the legislature. There is no inconsistency between the holding in this case and that of *Casagrande.* The definition of "good cause" in 8 CSR 10–5.040(4) is invalid only where it applies to define a statutory term, as in this case.

Motion denied.

---

**5.** This determination of "good cause" requires an exercise of the discretion of the agency tribunal, and is distinguished from the determination of whether the evidence and inferences establish good cause to voluntarily terminate employment, which is a question of law for the appellate

court. *See Hilden,* 936 S.W.2d at 209; *Mitchell v. Division of Employment Sec.,* 922 S.W.2d 425, 428 (Mo.App.1996); *Heavy Duty Trux v. Labor & Indus. Rel. Com'n,* 880 S.W.2d 637, 641 (Mo. App.1994).