**Kathleen REISDORPH, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 56629.**

Missouri Court of Appeals, Western District.

Submitted July 15, 1999.

Decided Nov. 30, 1999.

**170**

Mark A. Buchanan, Kansas City, for appellant.

Sharon A. Willis, Government Counsel, Kansas City, for respondent.

Before ALBERT A. RIEDERER, Presiding Judge; JAMES M. SMART, Jr., Judge, and JOSEPH M. ELLIS, Judge.

PER CURIAM.

Kathleen Reisdorph appeals a decision of the Labor and Industrial Relations Commission ("Commission") denying her request to backdate her claim for unemployment benefits. Reisdorph claims that, as a matter of law, she had good cause to delay filing for unemployment benefits, and therefore it was error to deny her request to backdate her claim.

The decision of the Commission is affirmed.

### Factual Background

Kathleen Reisdorph was employed as a practice administrator for Columbia Physician Services at Columbia Independence Regional Medical Center ("Columbia") until September 5, 1997. Reisdorph was laid off as the result of a reduction in the work force. After her termination, a dispute arose with Columbia regarding the amount of Reisdorph's severance pay and bonus.

On September 5, 1997, the date of her termination, Reisdorph received a proposed written release and severance agreement from Columbia. The proposed severance agreement offered her severance pay, and required her to acknowledge that she was voluntarily resigning her employment and would not claim unemployment compensation.

On September 19, 1997, Reisdorph wrote to Columbia, demanding a $10,500.00 bonus, six months' severance pay and other compensation for her termination totaling $57,918.90. Columbia responded on October 13, 1997. Columbia stated that if Reisdorph would sign the severance agreement and a general release, she would receive three months' severance pay. If Reisdorph elected not to

sign the severance agreement and a general release, she would be paid for two months. Columbia notified Reisdorph that the offer to pay her three months' severance pay would remain open for three weeks from the date of the letter. Reisdorph continued attempts to negotiate further, but was unable to change Columbia's posture. On December 10, 1997, Reisdorph accepted the severance payment of two months' salary, and declined to sign the proposed release agreement.

Reisdorph received two months of severance pay from Columbia on December 12, 1997. She filed a claim for unemployment benefits with the Division of Employment Security ("Division"), effective December 14, 1997, and requested that her benefit year be backdated to September 28, 1997.[1] On December 18, 1997, a deputy determined that Reisdorph's benefit year began on December 14, 1997. Reisdorph appealed this determination, and on January 23, 1998, a hearing was held before the Appeals Referee. The Appeals Referee affirmed the deputy's decision, and on April 23, 1998, the Commission issued an order affirming the decision of the Appeals Tribunal.

In a prior appeal, Reisdorph appealed the Commission's order to this court. This court ordered that the Commission's decision be set aside on the ground that the Division had applied an improper definition of "good cause" in making its determination because it had not applied common law principles of "good cause" in accordance with *PharmFlex, Inc. v. Division of Employment Sec.*, 964 S.W.2d 825 (Mo. App.1998). We remanded the matter with directions to enter a new decision applying the common law principles of "good cause" in accordance with the decision in *Pharm-Flex*, 964 S.W.2d 825, and *King v. Division of Employment Sec.*, 964 S.W.2d 832 (Mo. App.1998). On remand, the Commission again concluded that Reisdorph's benefit

year began on December 14, 1997, finding that she lacked "good cause" for delaying her filing for unemployment benefits. Reisdorph appeals.

■ In her sole point on appeal, Reisdorph argues that the Commission erred in finding that she did not have "good cause" for delaying her registration for unemployment compensation benefits until December 14, 1997. Reisdorph claims that the Commission's decision was not supported by substantial evidence, and was against the overwhelming weight of the evidence, in that she was negotiating an enhanced severance package with Columbia and believed, in good faith, that it would be counter-productive and unethical for her to file for unemployment benefits during the negotiations.

## Standard of Review

■ Reisdorph's appeal assumes that the decision whether to allow backdating of a claim leaves no room for agency discretion. She views the matter as being purely one of law. If that were true, we would have had no need to remand this case for consideration in light of *Pharm-flex*, because there are no factual issues in this case. Our review of the Commission's determination that Reisdorph did not have good cause to delay filing for unemployment benefits is only for an abuse of discretion. "The determination of good cause is addressed in the first instance to the sound discretion of the administrative agency, it depends on the evaluation of many subtle factors, and that determination is subject to judicial review only for abuse of discretion." *Bishop v. Labor & Indus. Relations Comm'n*, 567 S.W.2d 736, 740 (Mo.App.1978). *See also PharmFlex*, 964 S.W.2d at 832; *Mosca v. Missouri Dept. of Labor & Indus. Relations*, 924 S.W.2d 609, 611 (Mo.App.1996). An abuse of discretion occurs only where the outcome is "so arbitrary and unreasonable as

1. Reisdorph arrived at a benefit year beginning September 28, 1997, by adding three weeks vacation time, which she had accrued during her employment, to her separation date of September 5, 1997.

to shock the sense of justice and indicate a lack of careful consideration." *State ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804 (Mo. banc 1988). Where it is possible for reasonable minds to differ as to the propriety of the Commission's decision, there is not an abuse of discretion. *Id.*

### "Good Cause"

The Appeals Referee found that Reisdorph did not show good cause for postponing filing her claim for benefits. The Commission affirmed the decision of the Appeals Referee. The filing of an initial claim for unemployment benefits establishes a "benefit year." Section 288.030.1(3), RSMo Supp.1998, defines a benefit year as:

> ·the one-year period beginning with the first day of the first week with respect to which an insured worker first files an initial claim for determination of such worker's insured status, and thereafter the one-year period beginning with the first day of the first week with respect to which the individual, providing the individual is then an insured worker, next files such an initial claim after the end of the individual's last preceding benefit year[.]

Section 288.030.1(26)(c), RSMo Supp.1998, provides:

> An individual's **"week of unemployment"** shall begin the first day of the calendar week in which the individual registers at an employment office except that, *if for good cause* the individual's registration is delayed, the week of unemployment shall begin the first day of the calendar week in which the individual would have otherwise registered.

(Emphasis added).

Reisdorph testified that no one from Columbia or the Division interfered with her efforts to file for unemployment benefits. Nor is there any· evidence that any deception was practiced on her, or that she had failed to file through inadvertence or oversight. Rather, she claimed that she postponed filing for unemployment benefits because she thought it would be unethical and counterproductive to her severance negotiations with Columbia. Had Columbia negotiated for a waiver of unemployment compensation, and offered her a sufficiently large severance package, Reisdorph would have waived her right to seek unemployment compensation. Thus, her decision not to file an unemployment claim sooner was a strategic decision.

We note at the outset that Reisdorph has no specific authority indicating that an intentional decision to delay registering with the Division for strategic reasons constitutes "good cause." The meaning of the concept of "good cause" appears to vary to some extent according to the context in which the issue arises. Good cause has been defined as "a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reasonable man under all the circumstances." *State v. Davis,* 469 S.W.2d 1, 5 (Mo.1971) (quoting Webster's Third New International Dictionary). Generally, the term "good cause" necessarily implies reasonableness and good faith. *PharmFlex,* 964 S.W.2d at 830. We are presented with no authority that "good cause" in the context of a purposeful decision to delay filing must necessarily be equated with "good cause" in the usual context of a delay caused by illness, injury, or an inadvertent mistake.

### Avoidance of Manifest Injustice

In *Vaughn v. Ripley,* 416 S.W.2d 226, 228 (Mo.App.1967), an attorney failed to appear for trial because, as a result of poor judgment, he was relying on the opposing attorney to continue the case. The court examined the use of the term in Rule 75.01, the rule giving the trial court control of judgments for thirty days. *Id.* at 228–29. The rule allows the court "for good cause" to "vacate, reopen, correct, amend, or modify its judgment within that time." Rule 75.01. The court, in affirming the trial court decision to set aside the default,

noted that the term "good cause" contemplates a remedial purpose and is applied with discretion to prevent a manifest injustice or to avoid a threatened one. *Vaughn,* 416 S.W.2d at 228.

In *Adams v. Borello,* 975 S.W.2d 188, 190 (Mo.App.1998), the default judgment was set aside "for good cause shown" under Rule 74.05(d) where the attorney, in filing an answer to the petition, inadvertently put the wrong case number on the answer, and the answer was therefore filed in an earlier, closed case. The court held that the trial did not abuse its discretion in finding good cause to set aside the default judgment. *Id.* at 191.

"Good cause" has also been said to "encompass[ ] the occurrence of mistakes or conduct that is not intentionally or recklessly designed to impede the judicial process." *Brueggemann v. Elbert,* 948 S.W.2d 212, 214 (Mo.App.1997). Although her delay was purposeful, it was not in bad faith and did not impede any adjudicative process. Also, we cannot say that her conduct was unreasonable or in bad faith. However, the Division was entitled to consider the fact that her delay was purposeful for strategic reasons, and also the fact that it was not necessary to grant her request for backdating to avoid an injustice or grave hardship.

Because the concept of good cause is grounded in "equity or justice," *State v. Davis,* 469 S.W.2d at 5 (Mo.1971), the discretion of the Division may be exercised in favor of backdating when it is necessary to avoid an unjust hardship or forfeiture. In that regard, the Division was entitled to consider that this was not a case in which Ms. Reisdorph, after several months of good faith negotiations, received nothing from her former employer. Rather, she received two months of full pay from her former employer and retained the right to apply for unemployment compensation in addition.

Claimant argues that there are policy reasons for allowing backdating where a claimant delays filing in order to increase the possibility of not having to file at all. While that may be true, the Division must exercise its discretion in the first instance, subject to review by the Commission. If that discretion is not contrary to statutory authority and is not an abuse of discretion, we must affirm. Here, we cannot say that the Commission's denying Reisdorph's request to backdate her claim for unemployment benefits is contrary to law. Nor can we say the ruling shocks our sense of justice or indicates a lack of careful consideration. We hold that the Commission did not abuse its discretion in refusing to backdate Reisdorph's claim for unemployment benefits.

The judgment of the Commission is affirmed.