**STATE of Missouri, Respondent,**

v.

**Roosevelt DAVIS, Jr., Appellant.**

No. 56472.

Supreme Court of Missouri,
Division No. 2.

June 28, 1971.

Thomas W. Shannon, Pros. Atty. of St. Louis, Gerald L. Birnbaum, Asst. Pros. Atty., for respondent (Plaintiff).

Thad F. Niemira, St. Louis, for appellant.

FINCH, Judge.

The principal questions presented on this appeal are whether § 559.353,[1] the criminal nonsupport statute, is unconstitutional, and if not, whether a submissible case thereunder was made against the defendant.[2]

Defendant was charged by information in the St. Louis Court of Criminal Correction with failing, neglecting and refusing, without good cause, to provide adequate food, clothing, lodging, medical and surgical attention for his four named children, all of whom were under sixteen years of age. He was found guilty by the judge and sentenced to imprisonment for six months in the City Workhouse. He appealed to the St. Louis Court of Appeals, which transferred the case to this court because constitutional issues were presented. State v. Davis, Mo.App., 462 S.W.2d 178. We affirm.

The evidence pertinent to the questions presented was as follows: Defendant is

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

2. The full text of § 559.353 is as follows: "Any man who, without good cause, fails, neglects or refuses to provide adequate food, clothing, lodging, or medical or surgical attention for his wife; or any man or woman who, without good cause, abandons or deserts or, without good cause, fails, neglects or refuses to provide adequate food, clothing, lodging, or medical or surgical attention for his child born in or out of wedlock, under the age of sixteen years, or if any person, not the father or mother, having the legal care or custody of such minor child, without good cause, fails, refuses or neglects to provide adequate food, clothing, lodging, or medical or surgical attention for the child, whether or not in either such case the child by reason of such failure, neglect or refusal actually suffers physical or material want or destitution, is guilty of a misdemeanor and upon conviction thereof shall be punished as provided by law."

the father of four young children. In 1967, Patricia Davis, the mother, obtained a divorce in which the court awarded custody of the children to her and directed payment of child support of $12.50 per month per child. In August 1968, Patricia Davis went on welfare, and during that same month the information against defendant was filed. Defendant was employed as a laboratory technician's helper at Jewish Hospital and his take-home pay was $135 to $140 every two weeks. Mrs. Davis also was employed at Jewish Hospital. She testified that she saw defendant frequently and asked for money, to which he replied he could not give her any at that time but would mail something. She testified he had given her only $35 during the preceding year. Defendant testified that over a period of years he had given his former wife $900, but he was not specific as to when those payments were made, or what had been paid during the year preceding the filing of the information. He testified that his wife had told him she didn't want any money from him. He also testified that some man had called, saying he was staying there, that he was taking care of the children and didn't need help from him.

We consider first the constitutional issue. Defendant argues that his duty to support his children had been reduced to a judgment for money in the divorce proceeding and that the instant prosecution merely sought to enforce that judgment by jailing him for nonpayment thereof. This, he says, violates Art. I, § 11, of the Constitution of Missouri, 1945, V.A.M.S., which forbids imprisonment for debt except for nonpayment of fines and penalties imposed by law.

This contention misconceives the nature and purpose of § 559.353. That statute is predicated upon the theory that both parents have a legal obligation to look after and provide for their offspring, and that the failure to perform that obligation, without good cause, is a punishable offense against the state.[3] Such obligation has no reference to the marital status of the parents or even whether the child was born in or out of wedlock. A prosecution under the statute is for violation of the obligation imposed by the statute on the man or wife with respect to his or her minor child. It is not a proceeding to enforce the terms of a divorce decree providing support for minor children and is not a proceeding seeking imprisonment for debt. A divorce decree with a provision for child support is not a prerequisite to a prosecution under § 559.353, and by the same token the existence of such a support decree does not bar a prosecution under that section.[4]

Defendant cites and relies on Partney v. Partney, Mo.App., 442 S.W.2d 117, but that case is not pertinent to the issue here presented. It involved an attempt by a wife to have her former husband held in contempt of court for failure to pay a balance of alimony, child support and attorney fees provided for in a divorce decree. The court held that this would violate the constitutional provision barring imprisonment for debt. Partney, obviously, had no reference to the misdemeanor created by statute and did not involve a prosecution for violation of such criminal statute. It was simply an attempt by a contempt proceeding to force payment of the sums ordered paid in a divorce decree. That was not permissible.

3. The criminal nature of this statute and proceedings thereunder is recognized in State v. Arnett, Mo.App. 370 S.W.2d 169, 174 [12–14], and in State v. Osborne, Mo.App., 413 S.W.2d 571, 574 [9].

4. The case of Paul v. Paul, Mo., 439 S.W. 2d 746, was a proceeding under the Uniform Reciprocal Enforcement of Support law to enforce payment of child support ordered in Arizona. Section 559.353 was not involved. However, it is pertinent to the extent that it recognizes that the statute provided an additional remedy to enforce the father's obligation to support which was not affected by or limited to a prior Missouri divorce decree and the support provisions therein contained.

Also cited is the case of Lodahl v. Papenberg, Mo., 277 S.W.2d 548, in which a former wife sought by civil action to recover from her former husband for expenditures which she had made on behalf of their minor child. The father had been ordered by a divorce decree to make payments for child support, and Lodahl stands for the proposition that, under such circumstances, the wife could not elect to ignore the divorce decree and bring a separate civil action to recover for expenditures which she had made. It is not authority for the proposition that the state cannot make it a crime for a parent to abandon or fail to support a minor child.

Defendant next asserts unconstitutionality by arguing that application of § 559.353 to the particular kind of debt which he says this case involves is a denial to this defendant debtor of equal protection of the laws. The basis asserted for this claim is that no other judgment debtors are subjected to the possibility of criminal prosecution for failing to pay a judgment debt. This contention also depends on the false premise that § 559.353 seeks to enforce a debt. It does not. Rather, as previously indicated, it provides punishment for the father or mother who violates the criminal statute by abandoning or failing to support his or her child without good cause. Since this is not a prosecution for debt, but rather is one for violation of a duty to look after and provide for one's minor children, it does not result in a denial of equal protection as between debtors.

Next, defendant urges unconstitutionality of the statute on the basis that it is so vague and indefinite as to result in deprivation of due process and a denial of equal protection. This argument is based on the proposition that the statute speaks of "adequate" support and of "good cause" for failing to support without defining those terms or establishing standards for their determination. Consequently, says defendant, a parent cannot ascertain just what is prohibited or when one is excused for good cause.

In State v. Arnett, supra, the constitutionality of § 559.350, RSMo 1959, V.A.M. S., the predecessor of § 559.353, was not passed upon by the Court of Appeals, but the court did discuss the meaning of the term "adequate" in considering whether the evidence was sufficient to sustain the conviction therein. In that connection, the court said, 370 S.W.2d l.c. 173:

"Some of the common definitions of 'adequate' are 'commensurate in fitness; sufficient; suitable' (Shorter Oxford English Dictionary); 'equal to or sufficient for some specific requirement; proportionate, or correspondent; fully sufficient; legally sufficient, such as is lawfully and reasonably sufficient' (Webster's New International Dictionary, Second Edition); 'equal to what is required; suitable to the case or occasion; fully sufficient; proportionate, as an *adequate* supply of food' (Funk & Wagnalls New Standard Dictionary of the English Language).

"In those cases which have had occasion to construe the similar statutes it has been held that adequate support means personal support, maintenance, food, clothing, et cetera, reasonably suitable to the condition in life and commensurate with the defendant's ability. State v. Clark, 234 N.C. 192, 66 S.E.2d 669; Szilagyi v. Szilagyi, 170 Misc. 1009, 11 N.Y.S.2d 469, 472; People v. Rogers, Co.Ct., 37 N.Y.S.2d 254; 2 Words and Phrases, 'Adequate' p. 544; and 'Adequate Support' p. 583."

We conclude that the above is a fair interpretation of the meaning of the term "adequate." The word is frequently used. An example is the phrase "adequate remedy at law." 1 C.J.S. p. 1462. It has a sufficiently fixed and well understood meaning that further definition in the statute was not required. The language was sufficient to apprize a parent of his obligation.

The second question is whether the term "good cause" is unconstitutionally vague. We do not think so. Webster's

Third New International Dictionary defines "good cause" as "a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reasonable man under all the circumstances."

In discussing this subject, the court in State v. Arnett, supra, 370 S.W.2d l.c. 172, said: "The state is required to prove every constituent element of its case, including both the failure to supply adequate support (without good cause) *and* defendant's ability to do so. But the *inability* to render the support required by law and moral sense must be an inability which is not brought about intentionally and willfully by the parent. In other words, he cannot willfully and voluntarily place himself in a condition whereby he is unable to discharge his legal and moral duty for the purpose of escaping such duty." Thus, it must be bona fide good cause.

In State v. Osborne, Mo.App., 413 S.W. 2d 571, 574, the Court of Appeals had no trouble with the term "for good cause" in its consideration of a charge that a father abandoned his children without good cause.

The term "good cause" is a frequently used term. For example, in Supreme Court Rule 83.26, V.A.M.R., it provides for dismissal of an appeal for failure to take various necessary steps to secure appellant review "unless, for good cause shown, it has granted further time for taking such steps." In the case of State v. Johnson, 318 Mo. 596, 300 S.W. 702, 703, this court considered a similar provision and found that the showing therein made constituted a good cause for not perfecting the appeal within the required twelve months. "Good cause" did not present a problem as being vague and indefinite.

Again, we conclude that the term "good cause" is used frequently and has a sufficiently well understood meaning that further definition was not required. The statute is not unconstitutional for vagueness.

Defendant next asserts that "The Court erred in denying the Appellant's Motions to Dismiss and motion for new trial since the State did not prove the guilt of the Appellant beyond a reasonable doubt in that the State did not prove that the Appellant had the capacity to provide the support called for by the divorce decree beyond a reasonable doubt, and did not prove that the Appellant lacked 'good cause' for not providing such support."

██ In this contention defendant again makes the mistake of equating a proceeding under § 559.353 with defendant's obligation under the divorce decree. The state did not have to prove that defendant had the capacity to provide the support called for by the divorce decree. Rather, the question was whether defendant had the capacity to provide adequate support and whether he had good cause for not so providing. Evidence was introduced as to defendant's income and his expenses, and the evidence was sufficient to show his ability to contribute support to his children. The evidence did not show good cause for failure so to do. The trial court did not err in overruling defendant's motion to dismiss. State v. Arnett, supra, 370 S.W.2d l.c. 172 [6–8].

██ One additional point, raised for the first time on appeal, relates to the sufficiency of the information on which defendant was prosecuted. It is defendant's position that the information was fatally defective on the theory that the associate prosecuting attorney who signed the information and on his oath stated the facts to be true according to his best information and belief, was not authorized to perform this act. Defendant relies on § 479.150, which says that all complaints or informations filed in the St. Louis Court of Criminal Correction shall be prepared or approved by the prosecuting attorney or by an assistant prosecuting attorney or by the person acting as such at that time. Otherwise, defendant argues, under § 479.130, any oth-

er person lodging the information is required to swear that he believes it to be true.

Section 56.590 authorizes the prosecuting attorney of the St. Louis Court of Criminal Correction to appoint two associate prosecuting attorneys and six assistant prosecuting attorneys. The associates rank next to the prosecuting attorney. While they are not specifically named in § 479.-150, we conclude that they are authorized to sign informations in the manner in which the associate signed in this case. State v. Falbo, Mo., 333 S.W.2d 279; State v. Carey, 318 Mo. 813, 1 S.W.2d 143. We hold that the information was not fatally defective and that the court did have jurisdiction.

Judgment affirmed.

All of the Judges concur.