**STATE of Missouri, Respondent,**

v.

**Warren WATKINS, Appellant.**

**No. WD 62508.**

Missouri Court of Appeals,
Western District.

Jan. 13, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2004.

Application for Transfer Denied
April 27, 2004.

William F. O'Sullivan, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris and Stephanie Morrell, Office of Attorney General, Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

The circuit court's judgment convicting Warren Watkins of criminal nonsupport of his children rested entirely on Watkins not paying the amount of child support ordered by the circuit court in proceedings dissolving his marriage. Although the amount of support ordered in the divorce proceeding was presumptively the correct amount of child support, the purpose underlying the award of child support in a civil, divorce proceeding differs significantly from the issue in this criminal case. The underlying assumption in a child support award in a divorce proceeding is that the child should receive "the amount that the parents would have spent if the household were intact." Supreme Court Rules, Form 14, Directions, Comments for Use and Examples for Completion of Form No. 14, Assumptions (2). In the criminal nonsupport statutes, the General Assembly mandates only that a parent provide "adequate support" for his children without consideration of other factors such as income that the child had received when his or her parents were married. Because the prosecution did not present any evidence showing that Watkins' payments, although not the amount ordered by the court in his divorce proceeding, were not enough to provide his children with their basic needs, the prosecution's evidence was not suffi-

cient to convict Watkins. We, therefore, reverse the circuit court's judgment.

In dissolving Watkins' marriage in 1995, the circuit court ordered Watkins to pay $464 each to two of his three children each month.[1] The third child was emancipated. Watkins did not comply with the order. He paid an average of $536 a month. At the time of trial in this case, Watkins' arrearage for child support was more than $34,000.

Authorities charged Watkins with one felony count of criminal nonsupport. After trial in 2001, the circuit court suspended imposition of sentence and placed him on probation for five years.[2] The terms of his probation included paying all of the ordered child support. Watkins did not comply with this order, and the circuit court revoked his probation and imposed a three-year prison sentence on February 19, 2003.

■ Watkins challenges the sufficiency of the prosecution's evidence. In reviewing a challenge to the sufficiency of evidence, we accept as true all of the evidence favorable to the prosecution and any favorable inferences that can be drawn from that evidence. We disregard all contrary evidence and inferences. We do not weigh the evidence but determine whether or not the evidence presented was a reasonably sufficient basis for the fact-finder to have found that Watkins was guilty beyond a reasonable doubt. *State v. Crawford,* 68 S.W.3d 406, 407–08 (Mo. banc 2002).

A parent commits the crime of nonsupport if he "knowingly fails to provide, with-

1. We have strong doubts that this was the correct amount. After examining the Form 14, we believe that the circuit court's award should have been about half this amount, but we cannot be certain from this record. Even if the circuit court did order Watkins to pay too much, it is not pertinent to resolving the issues in this case.

2. Watkins could not appeal at that time because the suspended imposition of sentence was not a final judgment. State v. Kimberley, 103 S.W.3d 850, 855 (Mo.App.2003). The circuit court's judgment did not become final and appealable until the circuit court imposed sentence. State v. Lynch, 679 S.W.2d 858, 860 (Mo. banc 1984).

out good cause, adequate support which such parent is legally obligated to provide[.]" Section 568.040.1, RSMo 2000. Support includes adequate food, clothing, lodging, and medical attention. Section 568.040.2(3), RSMo 2000.

◼ The Supreme Court has instructed that the General Assembly did not intend for § 568.040 to be used as a means of enforcing child support obligations in a dissolution decree. *State v. Morovitz,* 867 S.W.2d 506, 508 (Mo. banc 1993). That a parent is not paying what the circuit court ordered him to pay in a dissolution decree, while relevant, does not establish conclusively a criminal violation under § 568.040. *Morovitz,* 867 S.W.2d at 508; *State v. Sellers,* 77 S.W.3d 2, 5 (Mo.App.2002). Indeed, a support order is not even a requisite to criminal liability. A parent can be prosecuted for criminal nonsupport despite the absence of such an order. *State v. Davis,* 469 S.W.2d 1, 3 (Mo.1971) (applying § 559.353, RSMo 1969, predecessor to § 568.040). As the Supreme Court explained, "Every parent has a legal obligation to provide for his or her children, and a failure to do so without good cause is an offense against the State by virtue of § 568.040.1." *Morovitz,* 867 S.W.2d at 508. What is pertinent in determining a legal obligation to provide adequate support under § 568.040 is the relationship of the parent and the child. Section 568.040's reference to a parent's legal obligation to provide support for his child flows from this relationship. *Id.*

◼ Whether or not the support that Watkins provided was "adequate" is a question of fact. *State v. Degraffenreid,* 877 S.W.2d 210, 214 (Mo.App.1994). Because the state's evidence established only

that Watkins regularly paid less than the amount ordered by the court in the dissolution proceeding and did not seek to show that what Watkins was paying was not enough to provide for his children's basic needs, the state did not meet its burden of proving beyond a reasonable doubt that Watkins was in violation of § 568.040. That the payments he was making, despite not being the amount ordered, were sufficient to support his children's basic needs adequately is reasonably conceivable.[3]

◼ The prosecution's burden was to submit sufficient evidence from which a reasonable trier of fact could find each element of the offense established beyond a reasonable doubt. *State v. Hayes,* 88 S.W.3d 47, 56 (Mo.App.2002). The state's only evidence on the matter was testimony by Watkins' former wife, Teresa Watkins, that he was not regularly paying the amount ordered by the court in their divorce proceeding. During cross-examination, she also testified:

Q. Now, when [Watkins] gives you this, or you receive this child support, you do use that child support that you've been receiving for food, don't you?

A. A little of it. Most if it is for our education.

Q. Do you use any of it for clothing?

A. A little. And mostly it's for our education. It's not[—]it really doesn't go that far.

Q. What about lodging, some of that money's used for lodging, is it not?

A. No, it is not.

Q. So, you, with the benefit of your income from your job, help with the food, clothing and lodging, also, would that be a fair statement?

**3.** That this is true is made obvious if, as we suspect, he was paying almost double what he should have had to pay.

A. No, it is not. I am responsible. My son, our son, is in a private school and the money that we receive is basically to pay for his school. He needs books. He has to have lunch.

My daughter has to have transportation and gas for her car so she can go to school. We need this money so that my daughter can also obtain a college education.

The prosecution did not present evidence as to what the children's food, clothing, and lodging expenses were. The evidence established that Teresa Watkins assumed the primary burden for paying those expenses, whatever their amount, but it did not establish what was needed to provide adequately for the children's basic needs. The record is void of any evidence indicating that the amount that Watkins was paying would have been insufficient had it been spent solely on the items of support that he was obligated to provide under § 568.040: food, clothing, shelter, and medical attention. Because the fact-finder did not know what those expenses were, the fact-finder could not know whether or not Watkins was providing enough to pay for them. Determining whether or not a parent is providing "adequate support" is not resolved by asking whether or not enough money is left for food, clothing, shelter and medical expenses after other bills have been paid, but by asking whether or not a parent's monetary contribution as a whole would be sufficient were it first spent on the food, clothing, lodging, and medical care that he is obligated to provide.

The state's position at trial was that "adequate support" is the amount ordered by the circuit court in the divorce proceeding. We reject this contention, primarily because of the nature of child support awards in divorce proceedings.

In formulating Form 14, the Supreme Court has mandated that, in awarding child support, a circuit court may consider "extraordinary child-rearing costs," which include "the cost of tutoring sessions, ... camps, lessons, travel and other activities intended to enhance the athletic, social or cultural development of a child." Supreme Court Rules, Form 14, DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 6e: Other extraordinary child-rearing costs, A. *COMMENT*. Certainly, the General Assembly did not manifest intent to include such expenses in § 568.040. Nor did it manifest intent for a parent's criminal liability to turn wholly on the other parent's idea of what expenses should have priority over a child's basic needs for food, clothing, shelter, and medical care. Were it otherwise, an absurdity would result: A parent could provide more financial support than a child could possibly require and yet still be a felon.

Although the state's evidence was not sufficient to establish that Watkins provided inadequate support for food, clothing, and lodging, it did address specifically Watkins' allegedly inadequate support of his children's medical care. The state did not dispute Watkins' providing insurance to help defray the expense of his children's medical care, but it presented evidence that he did not authorize payment of two medical bills presented to the insurer. This evidence, however, was not sufficient to establish beyond a reasonable doubt that Watkins was guilty of criminal non-support. First, by insuring the children's health, Watkins was making provision for their medical attention. Indeed, the bills establish that the attention was provided. Second, we do not find any evidence indicating that either Teresa Watkins or the children were liable for the unpaid bills presented by the state. Without evidence that someone other than Watkins was liable to pay bills for which Watkins was obligated under the law, the record does not support the finding that Watkins failed

to provide adequate support. The General Assembly intended in § 568.040 to ensure that children get the support they need and that a recalcitrant parent be punished based on the extent to which he has failed to provide it. So long as the child gets the support and the parent ultimately pays for it, or provides insurance to cover the cost, it should make no difference that the bill might not yet have been paid at the time of trial.

Because the prosecution did not present sufficient evidence to support Watkins' conviction, we reverse the circuit court's judgment.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.