STATE of Missouri, Respondent,

v.

Brandy BURRELL, Appellant.

No. SC86306.

Supreme Court of Missouri,
En Banc.

April 26, 2005.

T. Jefferson Stephens, Office of Public Defender, Maryville, Amy M. Bartholow, Office of Public Defender, Columbia, Mo., for Appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Linda S. Lemke, Adriane D. Crouse, Asst. Attorneys General, Jefferson City, Mo., for respondent.

RUSSELL, J.

Brandy Burrell ("Mother") was convicted of one count of endangering the welfare of a child in the first degree in violation of section 568.045, RSMo 2000,[1] and one count of murder in the second degree in violation of section 565.021. She appeals, arguing that there was insufficient evidence from which the trial court could have found her guilty of first-degree child endangerment and second-degree murder. After an opinion by the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment of the trial court is affirmed.

## I. Facts

Mother, her boyfriend, Isaiah Washington, Sr. ("Father"), and their two-year-old son, Isaiah Washington, Jr. ("Child"), drove in October 2001 from Mother's home in Cameron, Missouri, to St. Joseph to visit Father's mother ("Grandmother"). When they arrived at Grandmother's house, Father began screaming and yelling at Child for saying a curse word. As they were going up the stairs, Father kicked

---

1. All references are to RSMo 2000 unless otherwise indicated.

Child hard enough to send him flying to the top of the stairway and into the dining room, landing on his stomach. He then kicked Child hard in the torso while he was lying on the ground. When Child attempted to rise, Father picked him up and slammed his face into the floor. He also put his foot on Child's face. Mother watched all of this and said nothing.

Father's brother ("Brother") witnessed the events and asked Mother if she was going to intervene. After she did not respond, Brother confronted Father and told him to stop hitting Child. Father and Brother got into a fistfight, and Grandmother told them she was calling the police because she did not want her home damaged by the fight. Father immediately stopped the fight and told Mother to pick up Child so they could leave.

Mother, Father, and Child went to the house of Father's aunt ("Aunt"). Aunt asked Mother about the large knot that had formed on Child's forehead, and Mother responded that Child fell. Aunt told Mother that she should take Child to the hospital. Mother said that they would take him to the hospital when they arrived back in Cameron. They stayed at Aunt's house for about twenty minutes and then returned to Mother's house in Cameron.

After returning home, Mother tried to feed Child, but he would not eat. He drank some milk and went to sleep. A couple hours later, Father tried to wake Child. Child was unable to stand on his own, and his eyes rolled back. Father put Child down in the hall and slapped his face and kicked him in an attempt to wake him. After they were unable to revive him, Mother and Father took him to the emergency room. By then, his body was limp, and he had no pulse and was not breathing. Hospital personnel were unable to resuscitate him, and he was pronounced dead shortly after midnight. Mother and Father both told hospital personnel that Child had tripped and hit his head on a coffee table earlier in the day. Because Child had numerous new and old bruises on his body and injuries inconsistent with Mother's story, hospital personnel contacted the police and medical examiner.

Mother told the police that Child had fallen around 3 p.m. at her home and hit his head on a coffee table. She stated that because she was concerned he might have a concussion, she had kept him awake until 8 or 9 p.m. The police received information that Brother informed the police that Father assaulted Child earlier that day at Grandmother's house. When Mother was told about Brother's statement, she did not reply and put her head down on the table. She indicated that she would like an attorney present, and the interview ceased.

An autopsy of Child's body revealed several injuries that were less than twenty-four hours old. The medical examiner noted external injuries to his forehead, left temple, right eyebrow, jaw, chin, lip, cheek, neck, chest, back, arms, left thigh, left ankle, groin, and an extensive portion of his right abdominal region. Internally, the medical examiner found bruises and blood on both of his lungs, fresh blood in his diaphragm and throughout his organs, hemorrhaging from the superior and inferior vena cava, hemorrhaging from his spleen, a tear in his colon, and injuries to his small bowel and tongue. The medical examiner also detected two bruises in the soft tissue under his scalp and blood underneath his skull. X-rays revealed several rib fractures, five of which had occurred within twenty-four hours. In addition, there were multiple tears in his liver, some several inches deep. At trial, the medical examiner testified that the cluster of injuries to his ribs, liver, and diaphragm were consistent with him being kicked. She determined that the cause of his death was internal bleeding from his injuries.

The medical examiner also found older, healing injuries to Child's upper and lower back, upper arms, elbows, knees, thighs, ankles, ribs, and buttocks. She noted several of his external scars were inconsistent with ordinary childhood injuries or falls. The medical examiner also discovered internal scar tissue indicating previous liver injuries, including a healing hematoma on the right side of his liver and several older, healing rib fractures.

After Father was arrested in conjunction with Child's death, Mother spoke with the police. She waived her Miranda rights and told a detective that Father had kicked Child "lightly in the butt" after he said a curse word and then placed him in the corner. She stated that Brother started a fight with Father, having taken offense to his discipline of Child. Mother claimed that after they returned to her house in Cameron, Child tripped over a piece of loose carpet and hit his head on a coffee table. When confronted with the fact that witnesses had reported seeing the bump on Child's head earlier that day in St. Joseph and that the preliminary autopsy revealed that he died from internal injuries and not the head injury, Mother was unable to provide an explanation for the internal injuries.

Mother was subsequently arrested and gave a written statement in which she described Father's attack on Child at Grandmother's house. Mother indicated that Father had started hitting and choking her while she was pregnant with Child. She stated that she and Father had separated while she was in jail and undergoing drug treatment for possession of marijuana, but that she starting seeing him again after she was released a year later. She said that shortly thereafter Father started hitting her and "beating on [Child]." He would "whoop [Child] hard on his butt" and that "it got to where [he] would punch and kick [Child]." Mother claimed that she tried to stop Father from beating Child a few times, but he would beat her when she did. She indicated that she and Child lived with Father until he was arrested for possession of narcotics. After Father's arrest, Mother's probation officer told her that she could not continue to live with him. She stated that she continued seeing him after he moved out.

Mother was charged with one count of child endangerment in the first degree and one count of murder in the second degree. After waiving her right to a jury trial, her case was tried to the court, and she was found guilty of both charges. She was sentenced to concurrent terms of seven years imprisonment on the child endangerment count and life imprisonment on the murder count. She now appeals.

## II. Standard of Review

Where a criminal defendant challenges the sufficiency of the evidence to support her conviction, this Court's review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt. *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998). This Court accepts as true all evidence favorable to the verdict and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993).

## III. Child Endangerment

Mother argues that there was insufficient evidence from which the trial court could have found her guilty of first-degree child endangerment. She asserts that the State failed to prove beyond a reasonable doubt that placing Child in contact with Father would result in an "actual" risk to his life, body, or health, or that she "knowingly" created that risk.

"A person commits the crime of endangering the welfare of a child in the first degree if ... [t]he person knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old." Sec. 568.045.

A person "acts knowingly", or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

Sec. 562.016.3.

Here, the charge for first-degree child endangerment filed by the State stated as follows:

[O]n or about ... October 26, 2001, in the County of Buchanan, State of Missouri, [Mother] knowingly acted in a manner that created a substantial risk to the life and body and health of [Child], a child less than seventeen years of age, by placing [Child] in direct contact with [Father] who [Mother] has previously seen physically abuse [Child] and by so doing [Mother] allowed [Child] to be assaulted by [Father].

■ Under section 568.045, there must be an actual, as opposed to a potential risk, to the life, body, or health of the child. *State v. Hunter*, 939 S.W.2d 542, 545 (Mo. App.1997); *State v. Wilson*, 920 S.W.2d 177, 180–81 (Mo.App.1996). This is a fact specific determination and requires an analysis of the facts in each case. *See, e.g., State v. Riggs*, 2 S.W.3d 867 (Mo.App. 1999); *Hunter*, 939 S.W.2d 542; *Wilson*, 920 S.W.2d 177.

■ This Court finds that the State produced sufficient evidence from which a reasonable trier of fact could conclude that Mother's act of placing Child in contact with Father on October 26 resulted in a substantial risk of harm to Child. Approximately a year before Child's death, Father began physically abusing Child. At first, he would slap Child hard on his butt, but later it escalated to his punching and kicking Child. Mother tried to stop this abuse a few times, but Father would beat her when she did. The Division of Family Services ("DFS") had been called three times regarding the abuse; however, there were never any charges brought against Father because the injuries of Child healed before two of the DFS visits.

Further, there was a risk to Child's life, body, or health after Father severely abused Child while at Grandmother's house. Mother witnessed the entire incident and did not stop it or take steps to remove Child from Father. Mother's actions in allowing Father to stay with them after this severe beating put Child in a situation where there was an actual risk of harm to him. That night, Father continued the abuse by slapping and kicking Child when he would not wake.

■ Mother also argues that the State failed to provide sufficient evidence that she "knowingly" created a substantial risk to the life, body, or health of Child by placing him in direct contact with Father. "There is no bright line test to determine whether or not a person's actions knowingly create a substantial risk to the health of a child." *Hunter*, 939 S.W.2d at 545. In making this determination, this Court looks to the totality of the circumstances. *Id.* The State may prove a defendant's knowledge by direct evidence and reasonable inferences drawn from the circumstances surrounding the incident. *Riggs*, 2 S.W.3d at 873.

This Court holds that there was sufficient evidence that Mother acted knowingly. Mother acted "knowingly" if she was "aware of the nature of [her] conduct or that [the attendant] circumstances exist[ed]" that created a substantial risk to

the life, body, or health of Child. *See* Sec. 562.016.3(2); Sec. 568.045. In her statement to the police, she admitted that Father's abuse of Child had escalated to the point where he hit and kicked Child, and that when Father did this, Mother was unable to stop him on several occasions because he would then hit her. In addition, the medical examiner testified not only about Child's injuries from that day, but also about Child's older, healing injuries that were inconsistent with ordinary childhood injuries. Because Mother was Child's primary care giver, it can be reasonably inferred that Mother knew that Child had pain in his stomach and chest when these older injuries occurred. Even Grandmother saw bruises on Child's mouth, cheek, forehead, and lower back that concerned her. Mother told Grandmother that these injuries were attributable to normal childhood injuries. Further, Father's abuse of Child was so severe that there were three investigations by DFS.

There was sufficient evidence to find Mother guilty of first-degree child endangerment.

## IV. Second–Degree Murder

■ In her second point, Mother argues that there was insufficient evidence from which the trial court could have found her guilty of second-degree murder because the actions of Father were an independent, intervening cause of Child's death. She further argues that Child's death was not a direct, natural, or reasonably foreseeable consequence of her actions in allowing him to have contact with Father.

■ A person is guilty of second-degree murder if she commits any felony and, in the perpetration of that felony, another person is killed as a result of the perpetration of that felony. Sec. 565.021.1(2). Under Missouri law, a defendant is responsible for any deaths that are the natural and proximate result of the commission of the felony. *State v. Black,* 50 S.W.3d 778, 785 (Mo. banc 2001); *State v. Blunt,* 863 S.W.2d 370, 371 (Mo.App. 1993). An independent, intervening cause, however, can relieve a defendant from criminal responsibility for the death. *State v. Baker,* 607 S.W.2d 153, 156 (Mo. banc 1980).

There was sufficient evidence to find that Mother committed the class D felony of first-degree child endangerment, and in perpetrating that felony Child was killed as a result of the perpetration of that felony. As previously noted, Mother placed Child in contact with Father on October 26. After witnessing Father's abuse of Child at Grandmother's house, Mother allowed Father to stay with her and Child for the rest of that day. Mother did not seek medical attention for Child although urged to do so. Father continued to abuse Child after they returned to Mother's house.

The evidence establishes the continuing abuse to Child and the clear causal relation between Mother's conduct in placing Child in contact with Father, refusing to seek timely medical attention, and the death of Child. Father's actions in abusing Child were not an independent, intervening cause of Child's death that would relieve Mother of criminal responsibility. Child's death was the foreseeable result of Mother's actions. Under these circumstances, there was sufficient evidence to find Mother guilty of second-degree murder.

## V. Conclusion

The judgment of the trial court is affirmed.

All concur.