STATE of Missouri, Respondent,

v.

Clifton Clyde REED, Jr., Appellant.

No. SC 86803.

Supreme Court of Missouri,
En Banc.

Jan. 10, 2006.

Nancy A. McKerrow, Office of the State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora Fichter, Asst. Atty. Gen., Jefferson City, for Respondent.

PER CURIAM.[1]

A jury convicted Clifton Reed, Jr., of six counts of criminal nonsupport, a class D felony.[2] The court imposed a sentence of five years on each count, to be served concurrently. Reed claims that the state improperly used its peremptory challenges to exclude males from the jury and that the state failed to prove the mental element of "knowingly." Finding no error, the judgment is affirmed.

**PEREMPTORY CHALLENGE**

**Standard of Review**

■ An appellate court reviews a trial court's ruling on a gender-*Batson*[3] challenge to determine whether the ruling is clearly erroneous. *State v. Marlowe,* 89 S.W.3d 464, 470 (Mo. banc 2002); *State v. Parker,* 836 S.W.2d 930, 943 (Mo. banc 1992).

**Discussion**

■ During jury selection the prosecutor exercised all seven of his peremptory challenges against men. Reed objected, claiming a *Batson* violation. The trial court required the State to provide reasonably specific and clear gender-neutral reasons for the strikes. The trial court found that the State did so. The burden then shifted to Reed to demonstrate that the State's explanations were pretextual and that the strikes were impermissibly based upon gender. Reed maintains he did so by demonstrating that similarly situated female jurors were not struck by the State. He further argues that the prosecutor wanted an all-female jury because a male was charged with failing to support his children and the two primary witnesses were Reed's ex-wife and the female supervisor of the child support division. Reed claims that the prosecutor's reasons for exercising the strikes were implausible.

There is no clear error in the trial court's determination that the prosecutor's reasons for peremptorily striking men were gender neutral. The prosecutor indi-

1. This Court transferred this case after opinion by the Court of Appeals, Southern District, authored by the Honorable Kenneth W. Shrum. *Mo. Const. article V, section 10.* Parts of that opinion are incorporated without further attribution.

2. All statutory references are to RSMo 2000. Criminal nonsupport is a class A misdemean-or, but is elevated to a class D felony if the person obligated to pay support commits the crime of nonsupport in each of six individual months within any twelve-month period or the total arrearage is in excess of $5,000. Section 568.040.4.

3. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

cated that it was his practice, after receiving the jury list, to put a "plus or minus or a question mark" beside names depending on the potential juror's occupation and the type of case to be tried. In this case, the prosecutor's initial list noted self-employed people tend to hide income and this was a support case. During voir dire, the prosecutor used a separate list to place a second mark indicating his preference for jurors based upon the way "they dress[ed]," "their facial expressions," and "the way they were paying attention."

In each of the cases of "similarly situated" females who had question marks on the first list, the prosecutor indicated the male potential juror was struck for having a minus sign next to his name on the list that was not resolved by further questioning. At the time he made his strikes, the lack of the second mark by the female potential juror indicated to the prosecutor that the appearance and demeanor of the potential juror eliminated any issues he had with her occupation. The prosecutor gave gender-neutral reasons for not striking the female potential jurors and for striking the male jurors.

The trial court's ruling, finding no pretext, is not clearly erroneous.

## MENTAL ELEMENT OF "KNOWINGLY"

### Standard of Review

When a criminal defendant challenges the sufficiency of the evidence to support a conviction, this Court's review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt.

*State v. Burrell,* 160 S.W.3d 798, 801 (Mo. banc 2005). This Court accepts as true all evidence favorable to the verdict and disregards all evidence and inferences to the contrary. *Id.*

## Discussion

In addition to his *Batson* claim, Reed alleges that the evidence was insufficient to support his convictions and sentences on Counts I, II, III, and IV. He correctly notes that the elements of a criminal nonsupport case against a parent are: (1) knowingly fails to provide, (2) without good cause, (3) adequate support, (4) that he or she is legally obligated to provide. *Section 568. 040. 1.* He argues the evidence at trial failed to prove the "knowledge" element of the crime because there was no proof that he knew there was an order of support.

*State v. Morovitz,* 867 S.W.2d 506, 508 (Mo. banc 1993), holds that proof of the relationship of parent to minor child is sufficient to establish a prima facie basis for a legal obligation of support. All that is required is "knowledge of the legal obligation to provide support in an adequate amount for the child." *Morovitz* at 509. As noted in *State v. Watkins,* 130 S.W.3d 598, 600 (Mo.App.2004), a parent's knowledge of a support order is not required because "a support order is not even a requisite to criminal liability. A parent can be prosecuted for criminal nonsupport despite the absence of such an order." Other cases support this conclusion.[4]

Succinctly stated, "[a dissolution] decree with a provision for child support is not a prerequisite to a prosecution under [section 568.040], and by the same token the existence of such a support decree does

---

**4.** In addition to *Morovitz* and *Watkins, see, e.g., State v. Davis,* 469 S.W.2d 1, 3 (Mo. 1971); *State v. Sellers,* 77 S.W.3d 2, 5 (Mo. App.2002); *State v. Schneider,* 971 S.W.2d 355, 356 (Mo.App.1998); *State v. Moss,* 791 S.W.2d 501, 503 (Mo.App.1990).

not bar a prosecution under that section." *State v. Davis,* 469 S.W.2d 1, 3 (Mo.1971). If court-ordered child support is not an element of the criminal nonsupport statute, then *a fortiori* knowledge of such an order is not required for a conviction under section 568.040. Consequently, Reed's point fails.

■ A further explanation may clarify any misconceptions. "The support of one's children involves the discharge of one of the most basic responsibilities that a person assumes as a member of society." *In re Warren,* 888 S.W.2d 334, 336 (Mo. banc 1994). Every parent has a legal obligation to provide for his or her children regardless of the existence of a child support order. *Morovitz,* 867 S.W.2d at 508. Proof of the relationship of parent to child is sufficient to establish a prima facie basis for a legal obligation of support. *Id.; Watkins,* 130 S.W.3d at 600.

■ The purpose of the criminal nonsupport statute is to compel recalcitrant parents to fulfill their obligations of care and support; the purpose is not to enforce court-ordered child support obligations. *State v. Moss,* 791 S.W.2d 501, 503 (Mo. App.1990). As such, in a prosecution under section 568.040, the existence of a child support order is merely evidence of what constitutes "adequate support." *State v. Sellers,* 77 S.W.3d 2, 5 (Mo.App.2002).

Here, the uncontradicted evidence showed that Reed sired two children by his ex-wife. He treated the children as his own throughout their lives, never disclaiming that he was their father. He admitted at trial that he was the children's father. Moreover, the uncontradicted evidence showed that he provided virtually no support for the children during the charged periods.

The State proved that a parent-child relationship existed, and this legal obli-

gation was never questioned. *Morovitz,* 867 S.W.2d at 508. Once Reed admitted that he was the father and never questioned this fact throughout their lives, he admitted that a legal obligation existed *and* he necessarily admitted that he had "knowledge of the legal obligation." *Id.* at 508–09.

In so holding, it is acknowledged that *Morovitz* found that the "knowledge" element was proven because "[d]efendant was aware of the court order of support, since it was a part of his dissolution decree and since he fought the obligation for years." *Id.* at 509. However, the Court neither held nor intimated that a support order was a prerequisite to proof of the knowledge element in a section 568.040 prosecution. The analysis of the "knowledge" element in that case was not exhaustive and did not delve into the history of the "knowing" requirement under section 568.040 and its predecessor statutes. The "knowledge" element was handled by merely noting that obviously it was proven via evidence that the defendant knew about his dissolution decree obligation. *Id.* Simply stated, the Court was not confronted with the implicit question presented here, *i.e.,* what evidence satisfies the knowledge element when there is no court-ordered support figure?

Contrary to Reed's assertions, *Morovitz* does not compel a finding that a father who lives apart from his children and fails, without good cause, to provide them adequate support, can avoid the reaches of section 568.040 simply due to the absence of knowledge of a court order setting a support amount. Such a notion is neither logical nor is it in keeping with the historically recognized purpose for such legislation, namely, punishment of a parent who fails to fulfill his or her legal duty to support his or her children, *State v. Earnest,* 162 S.W.2d 338, 342 (Mo.App.1942),

and securing for children such due and proper care as is necessary to protect their lives and health, *State v. Russell,* 102 S.W.2d 727, 728 (Mo.App.1937).

The result in this case does not make the "knowledge" element meaningless in a section 568.040 case. Examples of when resolution of the "knowledge" element could be dispositive include: (a) an instance where the alleged father of an out-of-wedlock child defends on the ground he never knew (during the relevant period of non-support) he had sired a child, or (b) a case in which a married father claims he had a long-term separation from his wife and that she bore a child during that separation without his knowledge. In these situations, the parent could fully admit that he was the biological father while still denying knowledge of the legal obligation during the relevant time periods. While this certainly would be termed generally as "good cause" for failing to support, it is not the type of "good cause" contemplated by the statute. Statutory "good cause" refers to a parent's inability to provide support, not the simple unknowing failure to provide such. *See section 568. 040. 1(2); Davis,* 469 S.W.2d at 5; *State v. Mehaffey,* 534 S.W.2d 563, 564 (Mo.App.1976), and cases cited therein; *State v. Hobbs,* 220 Mo.App. 632, 291 S.W. 184, 186 (1927) (predecessor statute).

In addition, the "knowledge" element could be dispositive if a person is charged with the class D felony of failing to pay child support and proof is required that the arrearage is more than $5,000. Section 568.040.4 provides:

> Criminal nonsupport is a class A misdemeanor, unless the person obligated to pay child support commits the crime of nonsupport in each of six individual months within any twelve-month period, or the total arrearage is in excess of five

thousand dollars, in either of which case it is a class D felony.

To prosecute a case as a class D felony because the total arrearage is in excess of $5,000, a defendant's knowledge of a specific legal obligation to pay a set dollar amount as child support is required. Otherwise, there would be no point in setting a $5,000 cumulative amount as an alternative to failure to pay any six individual months within a twelve-month period. In this case, the proof was sufficient because Reed was not charged under the $5,000 cumulative amount provision.

## CONCLUSION

The judgment is affirmed.

WOLFF, C.J., STITH, PRICE, LIMBAUGH and RUSSELL, JJ., concur; TEITELMAN, J., concurs in part and dissents in part in separate opinion filed; WHITE, J., concurs in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, Judge, concurring in part and dissenting in part.

I agree with the per curiam opinion that Reed's *Batson* challenge is without merit. I respectfully dissent because the state did not bear its burden of proving each element of the offense.

No one doubts that parents are under a moral obligation to take care of and provide for their children. What is at issue in this case, however, is the application of the criminal law and whether the state bore its burden of proving each element of the offense beyond a reasonable doubt. Section 568.040 is a criminal statute, and the rule of strict construction requires courts to construe criminal statutes strictly against the state. *State v. Hobokin,* 768 S.W.2d 76, 77 (Mo. banc 1989). Consequently, the resolution of this case must be

based upon a strict application of the plain language of section 568.040.

In relevant part, section 568.040 provides that "a parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause; adequate support which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law." Therefore, in order to convict a parent of nonsupport, the state must prove that the parent: (1) knowingly failed to provide; (2) without good cause; (3) adequate support; (4) which he or she was legally obligated to provide. *State v. Morovitz*, 867 S.W.2d 506, 508–509 (Mo. banc 1993). The per curiam opinion concludes that because the state proved that Reed knew he was the father, the state also established a "legal obligation" for purposes of section 568.040. This reasoning conflates the "knowingly" and "legal obligation" elements of section 568.040.

The terms "knowingly" and "legal obligation" are separate and distinct elements under section 568.040. If knowledge of paternity is sufficient to prove the legal obligation element under section 568.040, then there would be no need for courts to consider evidence of court ordered support obligations. Once parentage was established, the existence of a court ordered support obligation would be irrelevant as to the defendant's knowledge of a legal obligation. However, in all of the cases cited in the per curiam opinion, the "knowingly" element referred to the defendant's knowledge of a court ordered support obligation. In fact, there appears to be no case under section 568.040 or predecessor statutes in which a parent has been convicted of felony nonsupport absent a court ordered support obligation. If knowledge of parentage alone is deemed sufficient to establish a legal obligation for purposes of section 568.040, then the separate statuto-

ry element of "legal obligation" appears to be meaningless and redundant. When interpreting a statute, however, this Court is required to give meaning to every word of the legislative enactment. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998). Interpreting section 568.040.1 as the per curiam opinion relegates the separate statutory term "legal obligation" to surplusage, included for no reason. This Court has long held that every word of the statute should be given meaning and not be considered a needless repetition. *Lora v. Director of Revenue*, 618 S.W.2d 630, 633 (Mo. banc 1981). Until today's decision, the courts and the state have implicitly recognized this by securing convictions for felony nonsupport only upon proof of the defendant's knowledge of a legal obligation in the form of a court ordered support obligation.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the conviction of any defendant "except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 314–15, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979). The state has failed to prove that Reed knowingly failed to meet a legal obligation to support his children. I would reverse the judgment on Counts I, II, III, and IV, but affirm the judgment in all other respects.