

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI,               )
                                 )
    Plaintiff-Respondent,        )
                                 )
v.                               )    No. SD35311
                                 )    Filed: November 4, 2019
DAVID HOWARD ABEL,               )
                                 )
    Defendant-Appellant.         )

### APPEAL FROM THE CIRCUIT COURT OF HICKORY COUNTY

Honorable Michael O. Hendrickson, Circuit Judge

**<u>AFFIRMED</u>**

This case involves the death by hyperthermia of the ten-month-old son (Infant) of David Abel (Defendant). Infant died because he overheated in his car seat after he was left in the family's car on a hot afternoon. Defendant was charged with committing the class A felony of neglect of a child by knowingly causing Infant to be placed in a situation in which the child might suffer physical injury as a result of neglect, and the child did suffer injury resulting in death. *See* §§ 568.060.2, 568.060.5(2).[1] A jury found Defendant guilty of this offense, and he was sentenced to 14 years in prison. This appeal followed.

---

[1] All statutory references are to RSMo Noncum. Supp. (2014).

Defendant presents one point for decision. He contends the "evidence failed to establish beyond a reasonable doubt that [he] acted knowingly." We disagree and affirm the trial court's judgment.

On appeal, sufficiency of the evidence is reviewed on the merits, regardless of whether that issue was raised at trial. **State v. Claycomb**, 470 S.W.3d 358, 362 (Mo. banc 2015). "Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." **State v. Lammers**, 479 S.W.3d 624, 632 (Mo. banc 2016). An appellate court considers all evidence in the light most favorable to the verdict, and grants the State all reasonable inferences. **Id**. Contrary evidence and inferences are disregarded. **Id**. "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." **State v. Nash**, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotation marks omitted); *see* **State v. Bateman**, 318 S.W.3d 681, 687 (Mo. banc 2010).

In August 2015, Defendant and his wife (Wife) were raising three sons. Wife had a 12-year-old son and a three-year-old son by another father. Defendant and Wife were the parents of ten-month-old Infant.

On August 1, 2015, the family went swimming at Pomme De Terre Lake with a friend, Robert Helmig (Helmig). Defendant loaded all three children into the family car and drove everyone to the lake. Wife was in the center of the front seat. Helmig was in the front passenger seat, and the three boys were in the back seat. Infant was in a car seat

behind the front passenger seat. Around 2:30 p.m., the group prepared to return home from the lake. Defendant loaded all three children into the car.

When the group arrived home, Defendant backed onto the driveway approach to the garage. He exited the vehicle and then got the two older boys out. Defendant did not take Infant from the car. Helmig exited the car about the same time as Defendant. Wife got out of the car "and immediately left on the 4-wheeler."[2] Helmig did not see anyone remove Infant from the car. Defendant started unloading some of the swimming items from the car and set them out to dry. Helmig went inside the house, called his ride and left about 20 minutes later.

At 5:23 p.m., Defendant called 911. Defendant told the dispatcher, "I think my baby is dead, he's not breathing." An EMT arrived at Defendant's house at 5:30 p.m. Defendant was holding Infant. The EMT observed that Infant was very hot to the touch, and he was grayish and blackish in color around the lips and fingernails. Defendant said they had left Infant in the car 90 to 120 minutes. The EMT examined Infant and determined

---

[2] The county coroner interviewed Defendant at his home shortly after Infant died. She gave the following testimony about that interview:

Q: And what did [Defendant] say at that time?

A: He said that he was the driver of the vehicle. [Wife] was in the front passenger seat. The children were in the back. [Infant] was directly behind [Wife] in the back seat, in a car seat. The 12 year old was sitting in the middle of the car, and the three year old was sitting directly behind [Defendant], in a car seat.

Q: Did he say what they did when they got home?

A: He said when they got home, he got out of the vehicle and lifted the three year old out of the car seat. The 12 year old climbed out over the car seat and exited the vehicle on the driver's side. *[Wife] got out of the vehicle and immediately left on the 4-wheeler.* (Italics added.)

3

that he was deceased. Infant had died of hyperthermia. Wife returned home, and Defendant kept repeating "[h]e's dead, he's dead, we killed him." Wife began hitting, kicking and biting Defendant and saying that he killed her baby. After police arrived, Wife was handcuffed and taken to the hospital.

As noted above, Defendant contends the State did not present sufficient evidence that Defendant acted knowingly. Defendant argues that there was no evidence he knowingly left Infant in his car seat when they got home. After reviewing the elements of the charged offense and the evidence favorable to the jury's verdict, we disagree.

The information charged Defendant with violating § 568.060.2(2), which states that "[a] person commits the offense of abuse or neglect of a child if such person knowingly causes a child who is less than eighteen years of age: … (2) [t]o be placed in a situation in which the child may suffer physical or mental injury as the result of abuse or neglect." *Id*. As used in this statute, "neglect" is defined to mean:

> the failure to provide, by those responsible for the care, custody, and control of a child under the age of eighteen years, the care reasonable and necessary to maintain the physical and mental health of the child, when such failure presents a substantial probability that death or physical injury or sexual injury would result[.]

§ 568.060.1(4). "A person **'acts knowingly'**, or with knowledge, (1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist …." § 562.016.3(1) (bold emphasis in original). There is "no bright line test" to determine whether or not a person acted knowingly. *State v. Burrell*, 160 S.W.3d 798, 802 (Mo. banc 2005). "In making this determination, this Court looks to the totality of the circumstances." *Id*. "The State may prove a defendant's knowledge by

4

direct evidence and reasonable inferences drawn from the circumstances surrounding the incident." *Id.*

When Defendant returned home from the lake, Infant was strapped into his car seat, unable to get out of it or the car on his own. Defendant got the older boys out of the car, but knew that he had not gotten Infant out of the car. We must credit his statement that Wife got out and immediately left on the 4-wheeler, so he knew she did not get Infant out either. Helmig, having seen no one take Infant from the car, left 20 minutes later without doing so. There was no evidence that anyone told Defendant that Infant had been removed from the car.

If Defendant knew neither he nor Wife had gotten Infant out of the car, and had seen no one else do so or heard that they had, he was aware of circumstances from which Infant might suffer physical injury as a result of neglect. *See* § 568.060.2(2). He was the only adult present who was responsible for Infant's care, and his failure to get Infant out of the car on a hot summer day created a substantial probability that Infant would suffer physical injury. *See* § 568.060.1(4). This evidence was sufficient to support the knowledge element in § 568.060.2(2). Our standard of review requires us to disregard the contrary evidence upon which Defendant bases his argument. *See Lammers*, 479 S.W.3d at 632.

Defendant's point is denied, and the judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

WILLIAM W. FRANCIS, P.J. – CONCUR