**Opinion issued August 29, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00196-CV**

———————————

**JANE DOE, Appellant**

**V.**

**OCCIDENTAL PETROLEUM CORP., Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-79468**

---

**MEMORANDUM OPINION**

Appellant Jane Doe was an employee of appellee Occidental Petroleum Corporation (Oxy). Doe alleged that she was sexually assaulted by another Oxy employee. Oxy investigated and terminated the other employee, and Doe and Oxy entered into a Settlement Agreement in which Oxy agreed to make certain

payments and agreed "not to take any adverse employment action against [Doe] arising from the [assault]." The Settlement Agreement contained a forum selection clause providing for resolution of "any action or proceeding arising in connection with" the Settlement Agreement in the state or federal courts of Harris County. After execution of the Settlement Agreement, while Doe was still employed at Oxy, Oxy issued two stock grants to Doe, and she accepted them. The terms and conditions of the grants contained a broad arbitration provision, including an express provision that controversies about the arbitrability of any dispute "shall be decided by the arbitrator."

Doe resigned and then sued Oxy, asserting that Oxy breached the Settlement Agreement by taking various "adverse employment actions" against her and by failing to pay for certain medical expenses. The trial court compelled the case to arbitration based on Oxy's contention that Doe's claims fell within the scope of the arbitration agreement in the stock grants. The arbitrator determined that the claims were arbitrable and found in favor of Oxy. Doe moved to vacate the arbitration award on the basis that the parties had no valid arbitration agreement, but the trial court denied that motion and rendered final judgment confirming the arbitration determination. In her sole issue on appeal, Doe asserts that the trial court erred in referring the claims to arbitration because the Settlement Agreement's mandatory forum selection clause controlled the dispute.

Because we conclude that a valid arbitration agreement existed between the parties, including an express agreement that controversies regarding arbitrability would be submitted to the arbitrator, we conclude that the trial court did not err in referring the matter to arbitration and confirming the arbitrator's determination.

We affirm.

## Background

Doe was employed by Oxy in 2015 when she alleged that she was sexually assaulted by another Oxy employee. The employee was criminally indicted for the assault, and Doe sued Oxy, alleging that the employee had assaulted other female employees and that Oxy "operated a workplace that facilitated a sexual predator's ability to systematically sexually abuse younger, female subordinates." Oxy investigated the allegations and terminated the man who assaulted Doe, but it denied any liability in connection with the assault.

Doe and Oxy eventually entered into a settlement agreement, executed in December 2015 (Settlement Agreement). Oxy agreed (1) to pay Doe $45,000 "to cover attorney's fees and expenses related to this issue"; (2) "not to take any adverse employment action against [Doe] arising from the [assault and her subsequent lawsuit] or this Agreement"; and (3) to "reimburse [Doe] for any payments made, including co-payments and deductible payments, that are incurred in the next (24) twenty-four months from the effective date of this Agreement" for

treatment arising from the assault "[t]o the extent any treatment is not covered by the [Oxy-sponsored] benefit plans." In exchange, Doe agreed to release all claims against Oxy. The Settlement Agreement further contained a forum selection clause:

> The Parties acknowledge and agree that any action or proceeding arising in connection with this Agreement shall be tried and litigated exclusively in the state and federal courts located in the County of Harris, State of Texas. The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the Parties with respect to or arising out of this Agreement in any jurisdiction other than those specified in this paragraph.

Doe continued to work for Oxy. In 2016, Oxy made two grants of restricted stock units to Doe as part of its long-term incentive plan, one issued in February 2016 and a second in July 2016. The stock grants were accomplished via a "Notice of Grant of Restrict Stock Unit Incentive Award" document and attachments that set out the terms and conditions of the transaction (Award Agreement). The Award Agreement provided that, by accepting the award, Doe agreed to be bound by the attached terms and conditions, which contained the following arbitration provision:[1]

> (a) Any dispute arising out of or in any way related to the Grantee's employment with the Company, or the termination of that employment, will be decided exclusively by final and binding arbitration pursuant to any procedures required by applicable law. To the extent not inconsistent with applicable law, any arbitration will be

---

[1] The arbitration provision appears in bolded all-caps in the terms and conditions, but we have reproduced the language in here traditional type-setting for ease of readability.

4

submitted to [the] American Arbitration Association ("AAA") and subject to AAA employment arbitration rules and mediation procedures in effect at the time of filing of the demand for arbitration. Only the following claims are excluded from this section 21: (i) claims for workers' compensation, unemployment compensation, or state disability benefits, and claims based upon any pension or welfare benefit plan the terms of which contain an arbitration or other non-judicial dispute resolution procedure, (ii) to the extent permitted by applicable law, claims for provisional remedies to maintain the status quo pending the outcome of arbitration, (iii) claims based on compensation award agreements and incentive plans, and (iv) claims which are not permitted by applicable law to be subject to a binding pre-dispute arbitration agreement.

(b) Any controversy regarding whether a particular dispute is subject to arbitration under this section 21 shall be decided by the arbitrator.

The Award Agreement also contained a provision addressing potential inconsistencies between the terms of the Award Agreement itself and other agreements:

12. **Entire Agreement; Relation to Plan; Interpretation**. Except as specifically provided in this Section 12, the Award Agreement (including these Terms and Conditions, the Notice of Grant and all incorporated attachments and exhibits) constitutes the entire agreement between the Company and the Grantee with respect to the Award. The Award Agreement is subject to the terms and conditions of the Plan. In the event of any inconsistent provisions between the Award Agreement and the Plan, the provisions of the Plan control. References to Sections and Attachments are to Sections of, and Attachments incorporated in, the Award Agreement unless otherwise noted. In the event of any inconsistent provisions between the Award Agreement and any employment agreement between the Grantee and the Company, the provisions of the Award Agreement control, except with respect to [arbitration provision] below.

5

Accepting these stock grants required that Doe electronically sign the Award Agreements by opening the Award Agreement, which included the terms and conditions, and re-entering a password to complete the acceptance.

Doe took a leave of absence and then ultimately resigned in 2016. She subsequently filed suit against Oxy in the trial court. She alleged that, after entering into the Settlement Agreement, she "continued to suffer from her severe physical injuries and mental disabilities," but Oxy "began to take adverse employment actions against her." She cited examples, stating that she was "ostracized at the workplace"; she "became the target of unfair criticisms from her supervisors," and "received negative workplace reviews for the first time"; she "did not receive appropriate and fair" bonuses or salary increases; and was "subjected to derogatory statements." She alleged that she "received so much negativity, harassment, hostility, and complaints in the workplace that she was forced to resign." She further alleged that she submitted medical expenses to Oxy between December 2015 and December 2017, but Oxy "failed to timely pay her medical expenses and failed to pay some of her medical expenses entirely." Thus, Doe alleged that Oxy breached the Settlement Agreement by failing to timely reimburse her medical expenses and by subjecting her to "various adverse employment actions."

6

Oxy moved to compel arbitration under the arbitration provisions in the Award Agreements to arbitrate "any disputes arising out of or in way related to" Doe's employment or termination of her employment. Oxy further cited the provision that "any controversy regarding whether a particular dispute is subject to arbitration under this [arbitration provision] shall be decided by the arbitrator."

The trial court compelled the case to arbitration. The arbitrator issued a written decision in which it determined that Doe's claims against Oxy were subject to the arbitration provision in the Award Agreements. The arbitrator further determined that Oxy was entitled to summary judgment in its favor on Doe's claims because she had provided no evidence that Oxy engaged in any adverse employment actions against her or that Oxy had failed to make any requested reimbursements of treatment expenses.

Doe moved to vacate the arbitrator's determination, arguing that there was no agreement to arbitrate the parties' dispute. *See* TEX. CIV. PRAC. & REM. CODE § 171.088(a)(4) ("[T]he court shall vacate an award if . . . there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection."). She argued that "the parties simply did not have an agreement to arbitrate" but instead "had an express and unambiguous agreement which required the dispute to be litigated exclusively in a judicial forum within

7

Harris County, Texas." The trial court denied the motion to vacate and confirmed the arbitration determination. This appeal followed.

## Arbitrability

In her sole issue on appeal, Doe asserts that the trial court should have "enforced the parties' mandatory forum selection clause and refused to refer this matter to arbitration."

### A.    Standard of Review

"A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Upon doing so, the burden shifts to the party opposing arbitration to raise a defense to the provision's enforcement. *Id.*; *see also In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 185, 187 (Tex. 2009) (orig. proceeding) (addressing contract-formation or contract-validity defenses raised by party opposing arbitration); *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013) (addressing argument that claims fall outside scope of arbitration agreement).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Henry*, 551 S.W.3d at 115 (quoting *In re Serv. Corp. Int'l*, 85

S.W.3d 171, 174 (Tex. 2002) (orig. proceeding)). "Both Texas policy and federal policy favor arbitration." *Id.* (citing *In re FirstMerit Bank*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding)).

We review a trial court's ruling on a motion to compel arbitration for abuse of discretion, deferring to the trial court's factual determinations if they are supported by evidence but reviewing its legal determinations de novo. *Id.* (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding)). "Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo." *Id.*

"Because arbitration is a matter of contract, parties can agree that arbitrators, rather than courts, must resolve disputes over the validity and scope of their arbitration agreement." *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 702 (Tex. 2023) (citing *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)). "If the parties have contractually agreed to delegate arbitrability disputes to the arbitrator, courts must enforce that agreement just as they must enforce an agreement to delegate resolution of the underlying merits to the arbitrator." *Id.* (citing *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018)).

Our determination of whether the parties have agreed to delegate arbitrability to an arbitrator is generally governed by contract-formation principles. *Id.* However, "because parties often 'might not focus [on] the significance of having arbitrators decide the scope of their own powers,' and to avoid the risk of requiring parties to arbitrate a dispute they have not agreed to arbitrate, courts will only enforce an agreement to delegate arbitrability to the arbitrator if that agreement is 'clear and unmistakable.'" *Id.* (quoting *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525, 532 (Tex. 2019)).

## B.    Analysis

Here, Oxy moved to compel arbitration. It was thus required to establish the existence of a valid arbitration agreement and to establish that the claims at issue fall within the scope of that agreement. *See Henry*, 551 S.W.3d at 115. The trial court determined, and we agree, that Oxy met these requirements. The Award Agreements containing the arbitration provision at issue here were valid, enforceable contracts. *See, e.g.*, *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003) (holding that "[a]rbitration agreements are interpreted under traditional contract principles," and thus, party "attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements"); *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that formation of valid contract requires

10

(1) offer, (2) acceptance in strict compliance with offer's terms, (3) meeting of minds, (4) each party's consent to terms, and (5) execution and delivery of contract with intent that it be mutual and binding). Oxy offered the stock grants under the terms and conditions set out in the Award Agreements, and Doe accepted, demonstrating a meeting of minds and consent to terms. Doe followed the procedure for opening, reviewing, and electronically accepting the stock grants. Oxy fulfilled its obligations in completing the stock grant. *See Plotkin*, 304 S.W.3d at 476.

Doe argues that she did not sign the Award Agreement. However, Oxy provided evidence in its motion to compel that Doe used their electronic system to accept the stock grant and accompanying terms and conditions in the Award Agreement. Oxy presented the affidavit of its Equity Consultant regarding the process of issuing and accepting the stock grant awards and records kept by Oxy. Oxy represented that an employee like Doe "cannot accept an Award granted by Oxy without accepting an Award Agreement by providing an Electronic Signature of the Award Agreement." The affidavit set out the steps in the "Electronic Signature Procedure" as requiring Doe to "click on a box on the Morgan Stanley website" and to "open the Award Agreement." The affidavit stated that Doe "is supposed to read the entire Award Agreement after opening it, but it is her decision whether or not to actually read it." Doe was then "required to re-enter her password

11

to complete the acceptance." Oxy provided records showing Doe's completed electronic signature accepting the award.

Thus, Oxy put forward evidence of Doe's electronic acceptance of the stock grant and Award Agreement by, among other acts, inputting her password to confirm acceptance. *See* TEX. BUS. & COM. CODE § 322.009(a) ("An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."). Doe provided a declaration that she "did not ever sign (physically, electronically, or in any other form) the Awards dated February 17, 2016, and July 13, 2016" and that she "did not ever intentionally and knowingly consent to the arbitration provisions purportedly contained in those Awards." But this bare assertion is insufficient to undermine the trial court's implied determination that Doe accepted the stock grant's terms and conditions as set out in the Award Agreement. Oxy provided uncontroverted evidence of the electronic delivery of the stock grants and the process for employees, like Doe, to accept the Award Agreement. Doe's conclusory declaration that she did not sign or accept the stock grant and Award Agreement's terms and conditions, including the arbitration award, do not address how her electronic acceptance occurred without her having done it herself. *See*

*Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 208–09 (Tex. 2021) (discussing requirements of section 322.009's framework for electronic signature attribution, and providing that once company proves security procedures, "the burden shifted to the Employees to demonstrate how their electronic signatures could have wound up on the [arbitration agreement] without their having placed them there themselves" and that "[m]ere denials do not suffice"); *see also In re Labatt Food. Serv.*, 279 S.W.3d at 643 (requiring review court "defer to the trial court's factual determinations if they are supported by evidence").

Doe further complains that the "boilerplate" arbitration provision in the Award Agreement did not reflect the negotiated agreement of the parties. As set out above, the arbitration provision was included as part of the Award Agreement terms and conditions attached to Oxy's stock grant to Doe, which she accepted. *See Fid. Auto Grp., LLC v. Hargroder*, 689 S.W.3d 1, 15 (Tex. App.—Beaumont 2024, no pet.) ("[W]e presume a party who can read a contract containing an arbitration agreement and signs it, knows its contents.") (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)); *see also URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018) (holding that courts presume parties intended what words of their contract say, and we interpret contract language according to its plain, ordinary, and generally accepted meaning unless contract directs us to read it differently). The arbitration provision in the Award Agreement was set out in a

13

separately numbered paragraph titled "Arbitration" and was the only provision in the Award Agreement set in bold-faced, capital lettering, and so was not inconspicuous or hidden. *See Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944–45 (Tex. 1996) (per curiam) (rejecting contention that arbitration provision was "hidden" and holding that provision that was sufficiently conspicuous and enforceable, observing that it was "highlighted" in "all capital letters and in bold text"); *In re Orkin Exterminating Co.*, No. 01-00-00730-CV, 2000 WL 1752900, at *1 (Tex. App.—Houston [1st Dist.] Nov. 30, 2000, orig. proceeding) (mem. op., not designated for publication) (rejecting argument that arbitration clause was "buried deep in boilerplate language which does not conspicuously demonstrate that legal rights are being forfeited," observing that provision was "printed in bold type and in all capital letters," was "set out in a separate, numbered paragraph entitled 'Mediation/Arbitration'" in reaching conclusion that clause was sufficiently conspicuous to enforce).

In addition to establishing the existence of a valid arbitration provision, Oxy established that Doe's claims fell within that provision. The Award Agreement contained a broad arbitration provision, providing that "[a]ny dispute arising out of or in any way related to [Doe's] employment with [Oxy], or the termination of that employment, will be decided exclusively by final and binding arbitration[.]" *See Henry*, 551 S.W.3d at 115–16 (holding that scope of arbitration clause that

14

includes all "disputes," and not just "claims" "is very broad and encompasses more than claims based solely on rights originating exclusively from the contract") (internal quotations omitted).

The arbitration provision further provided that "[a]ny controversy regarding whether a particular dispute is subject to arbitration under this [arbitration provision] shall be decided by the arbitrator." This express statement that controversies regarding whether a particular dispute is subject to arbitration "shall be decided by the arbitrator" is "clear and unmistakable" and must likewise be enforced. *See TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 702 ("If the parties have contractually agreed to delegate arbitrability disputes to the arbitrator, courts must enforce that agreement just as they must enforce an agreement to delegate resolution of the underlying merits to the arbitrator.").

Doe argues that the Award Agreement's paragraph 12 provides for an exception to arbitration for claims arising out of the Settlement Agreement. In relevant part, paragraph 12 provides, "In the event of any inconsistent provisions between the Award Agreement and any employment agreement between [Doe] and [Oxy], the provisions of the Award Agreement control, except with respect to [the arbitration provision] below." We observe, however, that Doe's Settlement Agreement does not address her compensation, term of employment, or job duties or responsibilities, and thus does not constitute an "employment agreement." *See*

15

*City of Hous. v. Williams*, 353 S.W.3d 128, 139 (Tex. 2011) ("In the context of employment agreements, typical essential terms include, among others, compensation, duties or responsibilities.") (internal quotation marks omitted); *Gonzalez v. Methodist Charlton Med. Ctr.*, No. 10-11-00257-CV, 2011 WL 6091255, at *8 (Tex. App.—Waco Dec. 7, 2011, no pet.) (mem. op.) (holding that employer's agreement to pay tuition did not "address the usual characteristics of employment contracts—whether [employee] earned hourly wages or was a salaried employee or indicated how may hours per week she was required to work" sufficient to support claim for wrongful termination). Furthermore, the Award Agreement's express provision that arbitrability is to be determined by the arbitrator requires that any controversy between the parties on this issue be submitted to the arbitrator for resolution. *See TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 702.

Doe further argues that the parties' forum selection clause contained in the Settlement Agreement is enforceable and applies to the dispute here, in which Doe alleged claims for breach of the settlement agreement. We disagree. First, we observe that both Texas policy and federal policy favor arbitration. *Henry*, 551 S.W.3d at 115; *In re FirstMerit Bank*, 52 S.W.3d at 753. We thus "resolve any doubts about an arbitration agreement's scope in favor of arbitration." *Henry*, 551 S.W.3d at 115. Second, in deciding questions about the scope of an arbitration

agreement, we "focus on the factual allegations and not on the legal causes of action asserted." *Id.* Here, Doe's allegations regarding the conditions of her ongoing employment and Oxy's obligations to make certain payments arising out of the Settlement Agreement, which the parties entered into to resolve her allegations of an unsafe workplace, constitute disputes "arising out of" or "related to" her employment with or termination from Oxy. *See id.* (holding that presumption in favor of arbitration "is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'") (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (emphasis in original)).

Doe argues that the forum selection clause was enforceable and argues that Oxy did not meet the burden it bears to oppose the enforcement of the forum selection clause. *See In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). Doe also argues that Oxy failed to prove the elements of a novation, arguing that Oxy cannot prove that the parties intended to modify the terms of the Settlement Agreement. *See N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 214 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The question before the trial court, and before this Court, however, is not the enforceability of the Settlement Agreement's forum selection clause but the question of whether

Oxy established that Doe's claims at issue fell within the scope of a valid arbitration agreement. *See Henry*, 551 S.W.3d at 115. As set out above, the Award Agreement contains a valid, enforceable, and broad arbitration provision, including an express agreement to have issues of arbitrability determined by the arbitrator. Oxy and Doe executed two Award Agreements containing substantively identical arbitration provisions after they executed the Settlement Agreement. Parties frequently enter into more than one agreement over the course of their dealings, and those agreements may contain conflicting provisions. *See, e.g.*, *TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 699–700, 720–21 (setting out "three different dispute-resolution clauses in the parties' three written agreements" and concluding that "valid arbitration agreement exists between parties" even though one of three agreements contained forum selection clause). Even in cases where multiple contracts exist between the parties, when a party moves for arbitration, the relevant inquiry remains whether the asserted claims fall within the scope of a valid arbitration provision. *See id.*; *Henry*, 551 S.W.3d at 115.

We conclude that the trial court did not err in compelling this case to arbitration. We therefore overrule Doe's sole issue on appeal.

**Conclusion**

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.